# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Louisiana Coastal Zone Land Loss Litigation | MDL No._____ |

## Memorandum in Support of Defendants' Motion for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407

Defendants file this brief in support of their motion for coordinated pretrial proceedings in the 41 actions listed on the Schedule of Actions (attached as Ex. 1).[1]

The cases should be transferred for coordinated pretrial proceedings to the United States District Court for the Eastern District of Louisiana – the location of 70% of the pending cases, most parties' attorneys, several defendants, and many witnesses and documents.

### Background

This motion concerns 41 substantially similar petitions filed by the same private law firm in Louisiana.

The cases were filed in five parishes in coastal Louisiana – Plaquemines, St. Bernard, Cameron, Vermilion, and Jefferson – until defendants recently removed them to federal court following receipt of plaintiffs' expert report which provided the removal grounds.

---

[1] This motion is filed by defendants Chevron U.S.A., Inc., Chevron U.S.A. Holdings Inc., The Texas Company, The Union Oil Company of California, Chevron Pipe Line Company, ConocoPhillips Company, Burlington Resources Oil & Gas Company LP, The Louisiana Land and Exploration Company LLC, Exxon Mobil Corporation, Mobil Oil Exploration & Producing Southeast, Inc., Atlantic Richfield Company, BP America Production Company, and BP Products North America Inc.

Each case was originally filed by the parish government for one of the five parishes. In each case, the parish government alleged that activities of oil and gas companies in a particular "operational area" caused harm to the wetlands in the operational area.

Plaquemines filed 21 cases; Cameron filed 11 cases; Jefferson filed 7 cases; Vermilion filed 1 case; and St. Bernard filed 1 case. Defendants removed the Plaquemines, St. Bernard, and Jefferson cases to the Eastern District of Louisiana, and the Cameron and Vermilion cases to the Western District of Louisiana.

Subsequent to filing of the lawsuits, the Louisiana Department of Natural Resources ("DNR") and Louisiana Attorney General ("AG") intervened as plaintiffs, purportedly in order to protect the interests of the State of Louisiana.

There are a total of 212 oil and gas companies in the 41 cases. Each case is asserted against the oil and gas companies that historically operated in the area at issue. Many of the defendants are sued in multiple cases; none of the defendants have been sued in all of the cases.

The factual allegations in the 41 cases relate to dredging, drilling, and waste disposal by the defendants. The parishes, DNR, and AG allege that defendants violated Louisiana's State and Local Coastal Resources Management Act of 1978 ("SLCRMA"), which was enacted pursuant to the federal Coastal Zone Management Act of 1972. In a recent expert report, the plaintiffs for the first time relied on the Final Environmental Impact Statement ("FEIS") for the Louisiana Coastal Resource Program (which the federal government considered in deciding to approve the program) to assert that, based on plaintiffs' interpretation of the FEIS, SLCRMA should be held to have rendered retroactively illegal decades of federally permitted, and in some cases federally required, activities in the operational areas. As a result, defendants removed these cases to federal court.

Argument

Congress enacted 28 U.S.C. § 1407 to address precisely this type of litigation: 41 cases each containing the same cause of action, nearly identical allegations, and the same sought-after relief. Core issues in these cases include the applicable federal authorizations and permits relating to operations in or affecting navigable waterways, the scientific principles and numerous alternative causes impacting coastal land loss, and the appropriate scope and interpretation of SLCRMA, the Federal Coastal Zone Management Act, and applicable National Oceanic and Atmospheric Administration (NOAA) regulations. These topics will be at issue in each case, and centralization will help to ensure that discovery is conducted efficiently and to avoid conflicting pretrial rulings.

All of the cases were recently removed following the receipt of plaintiffs' expert report; prior to that, minimal discovery was completed in state court, and no case is set for trial in federal court. Centralization will reduce the burden on parties and witnesses, avoid duplicative depositions, and streamline document production and motion practice. These cases will require extensive discovery, dozens of expert witnesses, hundreds of fact witnesses, and extensive motion practice directed to key legal issues, including subject-matter jurisdiction, affecting all of the cases. Coordinating fact discovery, expert discovery, *Daubert* motions, dispositive motions, and other pretrial proceedings will avoid conflicting decisions and streamline the cases for trial.

I. <u>The cases meet the statutory requirements for transfer in § 1407.</u>

These cases easily meet the statutory prerequisites for transfer under 28 U.S.C. § 1407. A transfer is appropriate if the cases "involve common questions of fact," centralization "will serve the convenience of the parties and witnesses," and centralization "will promote the just and

efficient conduct of the litigation." *In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*, 370 F. Supp. 2d. 1357, 1358 (J.P.M.L. 2005).

A. The cases share numerous common questions of fact.

The common questions of fact are shown by simple comparison of the petitions. Each petition is based on the same template, containing the same categories of allegations (despite having no specific allegations against any defendant), with only a shifting array of defendants, operations, and geographic boundaries.

In each case, the parish, DNR, and AG allege generally that the defendants dredged canals, drilled wells, and conducted other operations in a geographic area. Each petition asserts only one cause of action – under SLCRMA. SLCRMA, which was enacted in 1978 and created a coastal management program that was implemented in 1980, requires companies to obtain a coastal use permit when conducting certain activities in the Louisiana coastal zone. Each petition conclusorily alleges that the defendants violated SLCRMA either by violating a coastal use permit, or by failing to obtain a coastal use permit when one was required.

Each case attempts to redress the same problem – the loss of coastal wetlands. In each case, the plaintiffs try to pin land loss solely on the oil and gas industry, and thereby to recover damages from the defendants relating to the loss of coastal wetlands.

With their recent expert report, plaintiffs now seek to retroactively apply SLCMRA to decades of pre-SLCMRA federally directed or federally permitted oil and gas activities. These activities – from the 1930's through the 1970's – are the same activities alleged in the petitions for each case: dredging canals, discharging produced water, extracting hydrocarbons, using earthen pits, and failing to use practices which plaintiffs now claim were industry standard.

Addressing plaintiffs' factual allegations will require the resolution of many overlapping questions, including but not limited to:

- How did the State of Louisiana encourage oil and gas development in the coastal zone?

- What steps did federal and state authorities take to enforce SLCRMA and other applicable laws in the coastal zone?

- What standards did the Army Corps of Engineers follow in conducting dredging operations and what did the Corps tell defendants about how they should conduct dredging operations?

- What were the standard industry practices at the time the operations occurred?

- What were the emergency requirements imposed by the federal government on the oil and gas companies during World War II, the Korean War, or the oil embargo crisis and what did oil and gas companies do to comply with those requirements?

- What activities did the State allow in the Louisiana coastal zone that may have caused coastal wetlands loss?

- What activities did the federal government allow in coastal Louisiana both before and after SLCRMA's implementation?

- When did the State first acquire knowledge of the activities described in the petitions?

- Can SLCRMA be applied retroactively and what was the State's pre-litigation position on retroactivity?

The answers to these questions will be critical in defining the scope of permissible discovery, types of discovery needed, and bases for potential pretrial motion practice in all 41 cases as they move forward towards trial.

B. <u>Centralization is necessary to avoid inconsistent rulings.</u>

These cases are pending before nine different judges. The first order of business in each court likely will be anticipated remand motions which will raise nearly identical issues of federal subject-matter jurisdiction. Having a single court decide the identical jurisdictional question will promote efficiency and avoid potentially inconsistent rulings and unnecessary delay. *See In re*

5

*Griseofulvin Antitrust Litig.*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975) ("the institution of coordinated or consolidated pretrial proceedings at this time will allow a single judge to consider all venue and jurisdictional matters regarding all three actions and will thereby conserve judicial effort and prevent inconsistent rulings.").

Once the jurisdictional issues are resolved, defendants anticipate additional pretrial motion practice on multiple issues such as the scope of activities subject to SLCRMA's coastal use permitting regime, and whether SLCRMA applies to activities (including federally permitted and federally required activities) that pre-date its enactment. Defendants also believe it will be necessary to seek court guidance on discovery issues. As the Panel has previously recognized, "[c]entralization will enable the transferee judge to make consistent rulings on such discovery disputes from a global vantage point" and will otherwise prevent inconsistent pretrial rulings on common factual issues. *In re: Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009).

Given the highly technical nature of the case, both sides will rely extensively on experts, and *Daubert* motions are likely. Further, many of the same dispositive legal issues will be present in all of the cases – whether the alleged types of activities required coastal use permits under SLCMRA, whether activities commenced before SLCRMA's implementation are subject to SLCRMA's coastal use permitting requirements, what law and standards (including federal law) govern plaintiffs' claim that defendants acted in "bad faith" prior to SLCRMA's enactment, which permits were required, whether SLCRMA can be applied retroactively, and what remedies are available, to name a few. Thus, these cases will benefit from the coordinated handling of motions for summary judgment.

6

C.  Coordinating the cases will promote convenience and efficiency.

Transferring and coordinating these cases will promote efficiency and minimize the potential for duplicative discovery.

These cases will involve substantial discovery requests directed to the federal government, which permitted many of the activities at issue while at the same time engaging in its own activities – such as levee building – which likely are a substantial cause of the land loss at issue.

These cases will also involve substantial discovery requests and depositions of employees of the State of Louisiana and the parishes, which approved, permitted, encouraged, and sometimes even participated in the activities at issue, but which now seek to change the rules after the fact.

Plaintiffs likewise will want to take discovery from defendants, which also should be coordinated across the cases. The types of activities plaintiffs are challenging are similar across cases, and the types of records documenting such activities at various points in the broad time period that plaintiffs have pled will be similar across the industry as well. To the extent that there are challenges to the scope or type of discovery sought or provided, common challenges therefore will be raised across the cases, requiring common resolution to ensure fair and consistent results.

Coordinating discovery of these common issues will help all parties save money and ensure that these cases are resolved efficiently. *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to

accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands.").

These cases also raise certain common scientific issues that will be the subject of discovery. For example, it is well-recognized that certain regional forces play a significant role in affecting wetlands loss in the Louisiana coastal zone. Discovery regarding those regional forces in the Louisiana coastal zone will be highly significant in exploring the many questions of causation raised by plaintiffs' common allegations in the 41 cases. The regional forces include the overarching effect of massive federal engineering activities in the coastal zone. Likewise, the State's own decision-making regarding management of the Louisiana coastal zone raises important questions regarding the direct and indirect impact of those decisions on wetlands loss – questions that will be common to all 41 cases because they impact management of the entire Louisiana coastal zone and are particularly appropriate for discovery given that the State has intervened in all 41 cases.

Coordinating discovery with respect to the common scientific issues in these cases will minimize expert and other discovery costs and the need to conduct repetitive expert depositions or file serial *Daubert* motions on issues common to all cases. *See, e.g., In re: Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Practices Litig.*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) ("The record shows, however, that complex scientific issues concerning the effectiveness of the active ingredients in the Natrol products—in particular, glucosamine hydrochloride and chondroitin sulfate—will be litigated and many of the same clinical studies will be challenged. In our view, extensive common expert discovery and one or more *Daubert* hearings likely will be required.").

II. **The parties have completed minimal discovery and no cases are set for trial in federal court.**

Centralization of all cases is particularly appropriate because none of the cases are set for trial in federal court and only minimal discovery has taken place. In prior cases, the Panel has considered whether a case is close to trial as a factor militating against consolidation. *See In re Ocala Funding, LLC, Commercial Litig.*, 67 F. Supp. 2d. 1332, 1332 (J.P.M.L. 2012) ("Additionally, the New York actions are at an advanced stage of discovery, whereas discovery has not yet begun in the District of Columbia action"); *In re Upjohn Co. Antibiotic "Cleocin" Prods. Liab. Litig.*, 450 F. Supp. 1168, 1170 (J.P.M.L. 1978) (declining to consolidate certain cases because "it appears that discovery has been completed and trial scheduled.").

Here, all cases were recently removed from state court and none of the cases are even close to being trial-ready. While the cases were in state court, only five of the 41 cases had trial dates, with the earliest not scheduled to begin until March 2019: *Plaquemines v. Rozel Operating Co. et al.*, No. 2:18-cv-5189 (March 7, 2019); *Plaquemines v. Equitable Petroleum et al.*, No. 2:18-cv-5220 (May 1, 2019); *Plaquemines v. ConocoPhillips Co. et al.*, No. 2:18-cv-5230 (August 1, 2019); *Plaquemines v. Helis Oil & Gas*, No. 2:18-cv-05260 (Oct. 7, 2019); and *Plaquemines v. Hilcorp Energy Co. et al.*, No. 2:18-cv-5210 (Jan. 3, 2020). The Plaquemines Parish district court stayed the other sixteen cases involving Plaquemines Parish.

The parties in the five cases engaged in initial written discovery and produced documents. Plaintiffs took depositions about efforts to search for documents by certain defendants in certain cases (primarily *Rozel*), and plaintiffs served a preliminary expert report that, for the first time, identified the alleged "permit violations." The parties also conducted some environmental testing in one operational area (in the *Rozel* matter) that plaintiffs have represented is not complete. But, additional document discovery still needs to take place, and no

fact or expert depositions have taken place. Indeed, as the schedule stood prior to removal, discovery in the earliest matter (*Rozel*) was not scheduled to close until December 31, 2018.

The parties also participated in some initial written discovery and early motions practice in a few of the non-Plaquemines cases that are currently pending in the Eastern District of Louisiana, but discovery (where any has occurred) is still in a very early stage.

The Vermilion Parish case pending in the Western District of Louisiana is at a very early stage as well. Proceedings related to three of the six operational areas at issue in that case are stayed. Responsive pleadings are pending as to the other three operational areas, with some initial document productions made by certain of the defendants in two of the operational areas.

The Cameron Parish cases pending in the Western District of Louisiana were remanded after the initial removal on May 9, 2018. Because those cases were in state court for a short period of time, no substantive discovery has taken place. Given the relatively early stage of all of the cases, centralization is appropriate.

III. <u>The Panel should centralize the cases in the Eastern District of Louisiana.</u>

The Panel should centralize the cases in the Eastern District because 29 of the 41 cases are currently pending there. New Orleans is a convenient location for the parties and witnesses. And, the Eastern District has the capacity to resolve these cases efficiently.

A. <u>The Eastern District is the center of gravity of this litigation.</u>

The Eastern District of Louisiana is the center of gravity of these cases and the logical district for consolidation. Over 70% of the cases in this litigation are already pending in the Eastern District. This Panel has previously expressed a preference for transferring cases to the district where the largest number of cases are pending. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 528 F. Supp. 2d. 1358, 1359 (J.P.M.L. 2007) (transferring cases to district where the most cases were pending and noting "[w]e are persuaded that the District of District of

Columbia is an appropriate transferee forum for this litigation. Several actions are already pending there."); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016) (transferring cases to district where "a majority of actions already are pending").

B. New Orleans is a convenient location for the parties and relevant evidence and witnesses are located there.

Litigating these cases in New Orleans will be convenient for the parties and witnesses for a number of reasons. First, most parties are represented by lawyers with offices in New Orleans. Plaintiffs are represented by three firms with offices within the New Orleans metropolitan area: Cossich, Sumich, Parisola & Taylor, L.L.C., Connick and Connick, and Burglass & Tankersley, LLC – as well as attorneys in Baton Rouge, an hour-and-a-half drive from New Orleans. Almost every Defendant is represented by lawyers with offices in New Orleans.

Transferring the cases to the Eastern District will be convenient for the parties. Some of the parties' experts live or work in or around New Orleans. Three of the five parishes in the case are located in the Eastern District such that it will be a convenient location for parish employees. Relevant parish documents and other evidence is located in the Eastern District. The Army Corps of Engineers, whose activities are highly relevant to the alleged land loss, has an office in New Orleans. The Panel has held that the fact that relevant evidence is located in a particular district is a factor that weighs in favor of transferring the case to that district. *See, e.g., In re Am. Airlines, Inc. Privacy Litig.*, 342 F. Supp. 2d 1355 (J.P.M.L. 2004) (consolidating cases in the Northern District of Texas because, among other things, "the Texas district is likely to be the location of significant discovery because AMR and American's headquarters are located within this district.").

New Orleans is also within driving distance of Baton Rouge, the State Capital. The offices of DNR, the Attorney General, and other state agencies are located in Baton Rouge.

Employees of these agencies will inevitably be deposed. The relevant state agencies keep a number of paper files in their Baton Rouge offices. The Louisiana State Archives—which also likely maintains a number of relevant documents—is also located in Baton Rouge.

The Eastern District is also more convenient for parties, witnesses, and experts located outside of Louisiana. Louisiana's largest airport is located in New Orleans. Centralizing the cases in the Eastern District will make traveling easier and more affordable for out-of-state lawyers, parties, experts, and fact witnesses. *See, e.g.*, *In re Vehicle Carrier Servs. Antitrust Litig.*, 978 F. Supp. 2d 1382, 1383 (J.P.M.L. 2013) (choosing district because of "ease of accessibility.").

    C.    <u>The Eastern District of Louisiana has the capacity to efficiently resolve these cases.</u>

According to information published by the Administrative Office of the United States Courts, the Eastern District has a track record of efficiently resolving cases. Last year, the median time from filing to disposition in a civil case in the Eastern District was 7.1 months. In contrast, the median time to disposition was 12.3 months in the Middle District and 28.9 months in the Western District. Ex. 2. Cases also go to trial more quickly in the Eastern District. Last year, the median time from filing to trial in the Eastern District was 17.8 months compared to 35.1 months and 29.9 months in the Middle District and Western District, respectively. *See* Ex. 2; *In re. Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) (choosing the District of Columbia as the transferee district because "[e]ven more significantly, the median time interval from issue to trial in civil cases was eighteen months in the District of Columbia but twenty-seven months in the Southern District of New York.").

Conclusion

For the reasons outlined herein, Chevron U.S.A., Inc., Chevron U.S.A. Holdings, Inc., the Texas Company, the Union Oil Company of California, Chevron Pipe Line Company, ConocoPhillips Company, Burlington Resources Oil & Gas Company LP, The Louisiana Land and Exploration Company LLC, Exxon Mobil Corporation, Mobil Oil Exploration & Producing Southeast, Inc., Atlantic Richfield Company, BP America Production Company, and BP Products North America, Inc. request that the Panel order the cases listed on the Schedule of Actions be centralized in the United States District Court for the Eastern District of Louisiana for coordinated pretrial proceedings.

Dated: May 25, 2018

Respectfully submitted,

SUSMAN GODFREY L.L.P.

/s/ Eric J. Mayer
Eric J. Mayer (La. Bar No. 14184)
emayer@susmangodfrey.com
Alexandra White (La. Bar No. 29478)
lwhite@susmangodfrey.com
Johnny W. Carter (La. Bar No. 37985)
jcarter@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

-and-

KEAN MILLER LLP
L. Victor Gregoire (La. Bar No. 22400)
victor.gregoire@keanmiller.com
Charles S. McCowan III (La. Bar No. 19699)
trey.mccowan@keanmiller.com
Pamela R. Mascari (La. Bar No. 25162)
pam.mascari@keanmiller.com
II City Plaza

400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

-and-

KEAN MILLER LLP
Michael R. Phillips (La. Bar No. 21020)
mike.phillips@keanmiller.com
Claire E. Juneau (La. Bar No. 33209)
Claire.juneau@keanmiller.com
First Bank and Trust Tower, Suite 3600
909 Poydras, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3951

*Attorneys for Defendants Chevron U.S.A., Inc., Chevron U.S.A. Holdings Inc., The Texas Company, The Union Oil Company of California, and Chevron Pipe Line Company*


/s/ Deborah D. Kuchler
Deborah D. Kuchler, T.A. (La. Bar No. 17013)
Robert E. Guidry (La. Bar No. 28064)
Sarah E. Iiams (La. Bar No. 22418)
Michele Hale DeShazo (La. Bar No. 29893)
KUCHLER POLK WEINER, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
T. 504-592-0691
F. 504-592-0697

*Attorneys for Defendants ConocoPhillips Company, Burlington Resources Oil & Gas Company LP, and The Louisiana Land and Exploration Company LLP*

14

/s/ Robert B. McNeal
Robert B. McNeal (La. Bar No. 14211)
rbmcneal@liskow.com
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Michael P. Cash (La. Bar No. 31655)
mcash@liskow.com
LISKOW & LEWIS
First City Tower
1001 Fannin Street
Houston, Texas 77002-6756
Telephone: (713) 651-2900
Facsimile: (713) 651-2908

-and-

Jamie D. Rhymes (La. Bar No. 24621)
jdrhymes@liskow.com
LISKOW & LEWIS
822 Harding Street
Lafayette, Louisiana 70503
Telephone: (337) 232-7424
Facsimile: (337) 267-2399

-and-

Martin A. Stern (La. Bar No. 17154)
martin.stern@arlaw.com
Glen M. Pilié (No. 1539)
glen.pilie@arlaw.com
Jeffrey E. Richardson (No. 23273)
jeffrey.richardson@arlaw.com
Alexandra G. Roselli (#37847)
alexandra.roselli@arlaw.com
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210

-and-

Roy C. Cheatwood (La. Bar No. 04010)
rcheatwood@bakerdonelson.com
Monica A. Frois (La. Bar No. 20187)
mfrois@bakerdonelson.com
Matthew A. Woolf (La. Bar No. 27146)
mwoolf@bakerdonelson.com
Tyler L. Weidlich (La. Bar No. 30790)
tweidlich@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

*Attorneys for Exxon Mobil Corporation,
Mobil Oil Exploration & Producing Southeast, Inc.*


/s/ George Arceneaux III
George Arceneaux III (La. Bar No. 17442)
LISKOW & LEWIS
822 Harding Street
P.O. Box 52008
Lafayette, Louisiana 70505
Telephone: (337) 232-7424
Facsimile: (337) 267-2399

Joe B. Norman (La. Bar No. 8160)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

-and-

Nancy G. Milburn
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-8383
F: (212) 836-8699

16

Matthew T. Heartney
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
T: (213) 243-4150
F: (213) 243-4199

*Attorneys for Atlantic Richfield Company,*
*BP America Production Company,*
*BP Products North America Inc.*