UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE PARISH OF PLAQUEMINES,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 18-5189 |
| ROZEL OPERATING COMPANY, ET AL.,<br>    Defendants | SECTION: "E" (5) |

## ORDER AND REASONS

Before the Court is a motion to remand filed by the Parish of Plaquemines, Plaintiff-Intervenor the State of Louisiana, through the Louisiana Department of Natural Resources, Office of Coastal Management, and its Secretary, Thomas F. Harris, and Plaintiff-Intervenor the State of Louisiana *ex rel.* Jeff Landry, Attorney General (collectively "Plaintiffs").[1] Chevron U.S.A. Holdings, Inc., Chevron U.S.A. Inc., The Texas Company, Atlantic Richfield Company, ConocoPhillips Company, and The Louisiana Land and Exploration Company LLC (collectively "Defendants" or "removing Defendants") filed an opposition.[2] Plaintiffs filed a reply.[3] Plaintiffs filed a notice of supplemental authority.[4] The removing Defendants filed two notices of supplemental authority.[5] For the reasons that follow, Plaintiffs' motion to remand is **GRANTED**.[6]

## BACKGROUND

This case is one of many brought in Louisiana to determine the role played by oil and gas companies' oil production activities in the rapid loss of Louisiana's coastal

---

[1] R. Doc. 74.
[2] R. Doc. 76.
[3] R. Doc. 79.
[4] R. Doc. 80
[5] R. Docs. 81; 82
[6] R. Doc. 12.

1

wetlands. In each of the cases, Louisiana coastal parishes brought suit in state court against a collection of oil and gas companies, alleging that their oil production activities created pollution and land loss along Louisiana's coast. Specifically, Plaintiffs sue for violation of Louisiana's State and Local Coastal Resources Management Act of 1978 ("SLCRMA"). The SLCRMA regulates conduct within the Coastal Zone of Louisiana via a permitting system and provides a cause of action against companies that violate or fail to obtain permits. Each lawsuit alleges violations of the SLCRMA based on oil production activities that occurred in a specifically defined area along Louisiana's coast ("the Operational Area").

This collection of cases has a long and complex procedural history, tracing to state court in 2013. The Court will address only the procedural history relevant to the instant motion. Defendants removed this suit from the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, on May 23, 2018, pursuant to 28 U.S.C. § 1442, the federal officer removal statute.[7] Defendants' removal theory was that their World War II era contracts with the federal government and actions taken pursuant to those contracts brought them under the jurisdiction of this Court.[8] In June of 2018, sections of this Court stayed and administratively closed their cases pending a decision from the Judicial Panel on Multidistrict Litigation ("MDL Panel") on whether this collection of cases was appropriate for transfer and consolidation of proceedings.[9] On July 31, 2018, the MDL Panel denied the removing Defendants' request for MDL coordination.[10] The cases then remained stayed while a chosen "lead case" proceeded within this district—*Plaquemines*

---

[7] R. Doc. 1.
[8] *Id.*
[9] R. Doc. 38.
[10] R. Doc. 42 at p. 2.

*Parish v. Riverwood Production Co.*[11] At the same time, a second "lead case," *Cameron Parish v. Auster Oil & Gas, Inc.*, proceeded in the Middle District of Louisiana.[12]

On January 11, 2022, a section of this Court rejected the oil and gas companies' federal officer removal theory in the lead case *Riverwood* and remanded the case to state court.[13] The defendants appealed to the United States Court of Appeals for the Fifth Circuit.[14] The Fifth Circuit consolidated the "lead cases" from the Eastern and Middle Districts of Louisiana into one for the purpose of appeal, known as *Plaquemines Parish v. Chevron USA, Inc.*[15] On October 17, 2022, the Fifth Circuit affirmed the lower court's ruling that the case should be remanded to state court.[16] The defendants sought a writ of certiorari from the United States Supreme Court, which was denied on February 27, 2023.[17] After the writ of certiorari was denied and the Fifth Circuit's ruling in *Chevron* became final, this Court reopened the instant case.[18] On March 13, 2023, Plaintiffs filed the instant motion to remand, arguing the Fifth Circuit's ruling in *Chevron* precludes Defendants' federal officer removal theory.[19]

## **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the U.S. Constitution or by Congress.[20] "The removing party bears the burden of showing that federal jurisdiction exists and that removal was

---

[11] *Plaquemines Parish v. Riverwood Production Co.*, No. 18-5217 (E.D. La.).
[12] *Cameron Parish v. Auster Oil & Gas, Inc.*, No. 18-677 (M.D. La.).
[13] *Plaquemines Parish v. Riverwood Production Co.*, No. 18-5217, 2022 WL 101401, at *6-10 (E.D. La. Jan. 11, 2022).
[14] *Plaquemines Parish v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022).
[15] *Id.*
[16] R. Doc. 55-1; *Chevron*, No. 22-30055, 2022 WL 9914869.
[17] R. Doc. 67-1 at p. 1.
[18] R. Doc. 69.
[19] R. Doc. 74.
[20] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. Feb. 28, 2001).

proper."[21] Under 28 U.S.C. § 1442, Congress has allowed for the removal of state cases commenced against

> [t]he United States or any agency thereof or any officer . . . of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
>
> The time for removal is set forth in 28 U.S.C. § 1446, which provides:
>
> (b)(3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable.[22]
> . . .
> (g) Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.[23]

Section 1442(a)(1), "is a pure jurisdictional statute in which the raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action against the federal officer arises for [Article III] purposes."[24] This statute allows federal officers to "remove cases to federal court that ordinary federal question removal would not reach [, ] . . . even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in response."[25] Broadly speaking, this statute allows for removal "where a federal official is entitled to raise a defense arising out

---

[21] *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. Jan. 8, 2002).
[22] 28 U.S.C. § 1446(b) (emphasis added).
[23] 28 U.S.C. § 1442 (2018).
[24] *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (quoting *Mesa v. California*, 489 U.S. 121, 136 (1989)).
[25] *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. Feb. 24, 2020).

4

of his official duties."[26] The goal of the statute is to "prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so."[27]

Ordinarily, the removing defendant has the burden to establish that federal jurisdiction exists.[28] However, because § 1442(a) must be liberally construed,[29] whether federal officer removal jurisdiction exists must be assessed "without a thumb on the remand side of the scale."[30]

## LAW AND ANALYSIS

Defendants removed the instant action under 28 U.S.C. § 1442, the federal officer removal statute.[31] The federal officer removal statute authorizes removal when: (1) the defendant is a person within the meaning of the statute; (2) the defendant "acted under" the direction of a federal officer; (3) the defendant's complained-of conduct is "connected or associated with" or "related to" a federal directive; and (4) the defendant has a colorable federal defense.[32]

In the instant motion to remand, Plaintiffs argue the Fifth Circuit's recent decision in *Chevron* precludes Defendants' federal officer removal theory.[33] In *Chevron*, the Fifth Circuit affirmed another section of this Court's remand order based on a finding that the defendants did not act pursuant to a federal officer's directive.[34] In *Chevron*, the defendants presented two arguments as to how they acted pursuant to a federal officer's

---

[26] *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998).
[27] *Id.* at 397–98.
[28] *Manguno*, 276 F.3d at 723 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. Mar. 7, 1995)).
[29] *See, e.g, City of Walker v. Louisiana*, 877 F.3d 563, 569 (5th Cir. 2017) ("[F]ederal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited.").
[30] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016) (citations omitted).
[31] R. Doc. 1.
[32] *Latiolais*, 951 F.3d at 296.
[33] R. Doc. 74.
[34] *Chevron*, No. 23-30055, 2022 WL 9914869, at *2.

5

directive: (1) "that historical accounts show that they had an 'unusually close and special relationship' with the federal government" due to the level of federal regulation over the industry; and (2) "that because they were essential 'suppliers' for refineries that 'were contractually obligated to deliver to the government,' they were thereby 'subcontractors'" acting under a federal officer's direction.[35] The Fifth Circuit rejected both arguments.[36]

As to the first argument, the Fifth Circuit reiterated its previous holding that "merely being subject to federal regulations is not enough to bring a private action within § 1442(a)(1)."[37] As to the second argument, the Fifth Circuit affirmed the conclusion of the trial court that there was no evidence of such a subcontract relationship.[38] The Fifth Circuit went on to say that "even assuming *arguendo* that Producers were subcontractors, their mere status as subcontractors would not help establish that they 'acted under' a federal officer's directions."[39] Instead, the removing defendants still had to show they were subjected to the federal government's guidance or control as subcontractor—and the Fifth Circuit concluded they failed to do so.[40] Accordingly, the Fifth Circuit found that the defendants had failed to convince the court that they acted pursuant to a federal officer's direction.[41] The Fifth Circuit concluded by noting "[a]s the district court noted, the 'refineries, who had federal contracts and acted pursuant to those contracts, can likely remove under § 1442, but that does not extend to parties not under that contractual direction.'"[42] Based on the Fifth Circuit's rejection of the removing Defendants' bases for

---

[35] *Id.*
[36] *Id.* at *3.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at *4.
[41] *Id.*
[42] *Id.*

6

federal officer removal in *Chevron*, Plaintiffs argue the instant case is factually indistinguishable from *Chevron*, and therefore, the removing Defendants herein will likewise be unable to meet the requirements for federal officer removal.[43]

Latching on to the last statement in the Fifth Circuit's ruling in *Chevron*[44]—that the refineries who had federal contracts and acted pursuant to those contracts can likely remove under the federal officer removal statute—Defendants argue the fact that they acted as oil refiners pursuant to a federal contract, as well as oil producers, makes them factually distinguishable from the defendants in *Chevron*.[45] Defendants argue that, unlike in *Chevron*, where the defendants were only oil *producers*, at least one of the removing defendants in the instant case—namely, The Texas Company—was both an oil *producer* and *refiner* which contracted with the government to refine 100-octane aviation gasoline pursuant to a federal contract.[46] Specifically, Defendants argue (1) they acted pursuant to a federal officer's direction because they contracted with the federal government to refine

---

[43] R. Doc. 74.
[44] To the extent the removing Defendants argue this language from the Fifth Circuit definitively supports their position, the Court disagrees, finding language from another section of this Court persuasive:

> [T]he dicta in [*Chevron*] that the Removing Defendants rely upon does not support their new theory for federal officer removal and it is a far cry from demonstrating that the Fifth Circuit believed that an oil producer who acted as both a producer and a refiner pursuant to a federal contract could remove so long as it refined some of the crude from the Operational Area in that case. The defendants read much into a single unremarkable statement that refineries with their own federal contracts would "likely" be able to remove. But the Fifth Circuit would not have been suggesting that refineries could remove for claims based on oil production activities because refineries do not produce crude and they do not engage in oil producing activities like those being challenged in this lawsuit. Common sense would dictate that what the appellate court meant was that the refineries whose federal contracts the *Riverwood* defendants were trying to latch onto could satisfy the acting under requirement and remove if they had sued for activities taken pursuant to the federal directives in their refinery contracts, *i.e.*, refining activities.

*Parish of Plaquemines v. Northcoast Oil Co.*, No. 18-5228, 2023 WL 2986371, at *9-10 (E.D. La. Apr. 18, 2023).
[45] R. Doc. 76 at p. 2.
[46] *Id.*

7

100-octane aviation gasoline and other petroleum products; and (2) the charged conduct—Defendants' crude-oil-production activities—is closely related to its fulfillment of the federal refining contracts.[47] The Court disagrees.

Despite Defendants' attempts to distinguish the instant case from *Chevron*, the removing Defendants still are unable to demonstrate element three of the federal officer removal statute—that the removing Defendants' alleged violations of SLCRMA are "connected or associated with" or "related to" a federal directive.[48] The Fifth Circuit has held that "though the 'acting under' and 'connection' elements may often ride in tandem toward the same result, they are distinct."[49] "In other words, a defendant might be 'acting under' a federal officer, while at the same time the specific conduct at issue may not be 'connected or associated with an act pursuant to the federal officer's directions.'"[50] This is because "a defendant that acts under the government for some purposes does not necessarily act under the government 'for all purposes.'"[51] Instead, only those actions that are "connected or associated with an act under color of federal office may be removed."[52]

Even assuming that Defendants acted pursuant to a federal officer's directive based on their contract with the federal government to refine aviation fuel, Defendants have not

---

[47] *Id.* at p. 13.
[48] "In order to satisfy the 'acting under' requirement, a removing defendant need not show that its alleged conduct was precisely dictated by a federal officer's directive." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indemnity Co.*, 990 F.3d 447, 454 (5th Cir. 2021). "Instead, the 'acting under' inquiry examines the relationship between the removing party and the relevant federal officer, requiring courts to determine whether the federal officer 'exerts a sufficient level of subjection, guidance, or control' over the private actor." *Id.* Because the Court finds the removing Defendants have failed to establish the third element, the Court need not address the other elements. However, for the sake of argument in addressing the third element, the Court will assume, without holding, that the Removing Defendants established the second element—that they acted under a federal officer's directive because they contracted with the government to refine crude oil.
[49] *Id.*
[50] *Id.*
[51] *Id.* (quoting *St. Charles*, 990 F.3d at 455).
[52] *Latiolais*, 951 F.3d at 296.

8

shown that the charged conduct—the removing Defendants' oil production during the requisite time period—bears any relationship to the federal contract to refine aviation fuel. Wholly absent from this federal contract was any mention of oil production or where the removing Defendants should obtain the oil they refined to fulfill the contract. Moreover, Defendants' position is at odds with Fifth Circuit precedent and the ever-growing consensus of other sections of this Court.[53]

Defendants rely heavily on *Latiolais v. Huntington Ingalls, Inc.* In 2020, the Fifth Circuit addressed federal officer removal in the case of *Latiolais v. Huntington Ingalls, Inc.*[54] In that case, the Fifth Circuit expanded the conduct that could result in proper removal under the statute.[55] Specifically, the Fifth Circuit held "federal officer removal is not just for acts under a federal officer but also for those 'relating to,' or connected or associated with those federal acts."[56] In *Latiolais*, a ship builder who refurbished a navy vessel pursuant to a government contract that required the use of asbestos products was allowed to remove the plaintiff's suit grounded on the defendant's negligence in failing to warn him about the hazards of asbestos, even though the failure to warn of the use of asbestos was not dictated by the contract—only the *use* of asbestos was provided for.[57] The Fifth Circuit held that removal was proper because it was not necessary to show, for removal purposes, that the negligence, *i.e.*, the failure to warn, was specifically directed;

---

[53] *See id.*; *Northcoast Oil Co.*, No. 18-5228, 2023 WL 2986371; *Plaquemines Parish v. Exchange Oil and Gas Corp.*, No. 18-cv-5215, 2023 WL 3001417 (E.D. La. Apr. 19, 2023).
[54] *Latiolais*, 951 F.3d at 296.
[55] *Id.*
[56] *Northcoast Oil Co.*, No. 18-5228, 2023 WL 2986371, at *9 (citing *Latiolais*, 951 F.3d at 296).
[57] *Latiolais*, 951 F.3d at 296.

instead, it was enough that the plaintiff's negligence claims were *related to* a federal directive to use asbestos.[58]

While Defendants argue *Latiolais* supports their position, the Court finds Defendants' reliance on *Latiolais* is misplaced. Defendants contend that their charged conduct, *i.e.*, the violation of the SLCRMA, need not have been at the direction of a federal officer; instead, it is enough that the plaintiff's claim for a violation of the SLCRMA is related to the federal officer's directions in the refining contract as to *its refinery activities*. However, the removing Defendants stretch the holding in *Latiolais* beyond its plain meaning. Clearly at odds with Defendants' interpretation of *Latiolais* is the fact that, in *Latiolais*, the charged conduct was still related to a federal officer's directive to use asbestos. Nowhere in any contract pointed to by the removing Defendants did a federal officer direct the oil production activities of Defendants—the charged conduct in the instant case.

Moreover, the Court finds recent decisions of two other sections of this Court highly persuasive and further illustrative of Defendants' misinterpretation of *Latiolais*. In *Parish of Plaquemines v. Northcoast Oil Co.*, the defendants argued, as they do here, that their federal contract to sell to the government 100-octane aviation gasoline established they were acting under a federal officer.[59] The court in *Northcoast* highlighted the removing defendants' improper application of *Latiolais*:

> While *Latiolais* abandoned the stringent causal nexus test to recognize that the specific conduct being challenged need not have been directed by a federal officer, it nonetheless tethered its analysis to the specific federal directive that the plaintiff's claims were related to, *i.e.*, the directive to use asbestos in the refurbishment of a navy vessel. The defendant was acting

---

[58] *Id.*
[59] *Northcoast*, No. 18-5228, 2023 WL 2986371, at *8.

> under a federal officer when refurbishing the vessel for the navy, and in particular when using asbestos in the project, but it would no longer be necessary after *Latiolais* to show that any specific government directive was the cause of the negligence being sued upon. So while post-*Latiolais* the reach of the related to prong brings conduct not specifically directed by a federal officer into the scope of removal, the conduct must relate nonetheless to carrying out the directives of a federal officer. This is not the same as saying that a federal officer must have directed the specific conduct being challenged.
>
> This case lacks any connection between crude oil production activities and the directives of a federal officer as dictated by the federal contract. The Removing Defendants have attempted to elide past that problem by defining the federal directive as broadly as possible . . . and then creating a factual connection between oil production in Louisiana to federal activity at the refinery. But every case that the Court has reviewed, including the post-*Latiolais* decisions, that grounds federal officer removal on the relatedness to a federal contract, examines the directives of that contract when determining whether all of the requirements for federal officer removal are met, and in particular whether the plaintiff's claims relate to the directives of a federal officer.[60]

Like in the instant case, the court in *Northcoast* found "the Removing Defendants fail to point to a single directive in the Gulf contract that touched upon its upstream oil production activities in Louisiana or anywhere else."[61] Because "a defendant that acts under the government for some purposes does not necessarily act under the government 'for all purposes,'" the court concluded the defendants "may have acted under a federal officer when refining oil in Port Arthur, Texas but it did not act under a federal officer when producing that oil in Louisiana."[62]

Similarly, in *Plaquemines Parish v. Exchange Oil & Gas Corporation, et al.*, another section of this Court remanded a related case to state court for the same reasons adressed in *Northcoast*.[63] Moreover, in *Exchange Oil*, the court recognized that the

---

[60] *Id.* at *9.
[61] *Id.* at *10.
[62] *Id.*
[63] No. 18-cv-5215, 2023 WL 3001417.

defendants "are of course correct that 'a removing defendant need not show that its alleged conduct was precisely dictated by a federal officer's directive.'"[64] However, the court in *Exchange Oil* was "unconvinced under *Latiolais* and its as-yet limited progeny that the fact that Defendants may have refined oil under color of federal office must mean that its oil production activities were sufficiently related to those actions take under federal directive to satisfy the requirements of 28 U.S.C. § 1442."[65]

The Court joins the other sections of this court in finding the removing Defendants have failed to demonstrate element three of the federal officer removal statute—that the removing Defendants' alleged violations of SLCRMA are "connected or associated with" or "related to" a federal directive. Accordingly, removal of this action is improper, and their case must be remanded.

## CONCLUSION

**IT IS ORDERED** that Plaintiffs' motion to remand[66] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Court shall delay mailing the remand order to state court for five days to provide the removing Defendants with sufficient time to move for a stay pending appeal.

**New Orleans, Louisiana, this 10th day of May, 2023.**

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　**SUSIE MORGAN**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

---

[64] *Id.* at *3.
[65] *Id.*
[66] R. Doc. 74.