ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

**25TH JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES**

**STATE OF LOUISIANA**

**NO. 60-996** **Division "B"**

**THE PARISH OF PLAQUEMINES**

**VERSUS**

**ROZEL OPERATING CO., ET AL.**

**FILED:** ________________ ______________________
**DEPUTY CLERK**

**OBJECTIONS TO THE COURT'S JURY CHARGES AND VERDICT FORM**

Chevron U.S.A. Holdings Inc., Chevron U.S.A. Inc., and The Texas Company (collectively "Chevron") submit the following objections to the Jury Charges and Special Verdict Form provided to the parties by the trial court on April 3, 2025.[1]

## I. General Objections

Chevron begins with objections that relate to the jury charges and instructions taken as a whole. In particular, Chevron objects because the instructions fail to instruct the jury completely on the requirement of causation, fail to include instructions regarding how to measure damages (if any), and fail to instruct the jury on Chevron's affirmative defenses, including those that were erroneously dismissed on directed verdict.

The court's jury charges and special verdict form also fail to recognize that SLCRMA is a regulatory permitting statute that is tied to specific "uses" and "permits." As SLCRMA sets forth, a violation must be proven with regard to a specific use or permit. The Court's jury charges fail to so instruct, instead treating this case as a sort of mass tort. Respectfully, this is legal error. Plaintiffs are required under SLCRMA to prove violations use-by-use or permit-by-permit. That the Government has failed to do so here should not be excused through erroneous legal instructions.

[1] In further support of Chevron's objections, and pursuant to Louisiana Code of Civil Procedure article 853, Chevron adopts and incorporates by reference the arguments, undisputed facts, and essential legal elements in the multiple motions filed by Chevron in this matter to date, including Chevron's motions for summary judgment, motions in limine, and motions for directed verdicts.

EXHIBIT 7

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Chevron now sets forth some of the overarching errors in the instructions. Taken as a whole, the instructions constitute legal error because, among other things, they state:

(1) that SLCRMA allows recovery of damages for harms that occurred prior to September 20, 1980;[2]

(2) that SLCRMA's grandfather clause does not exempt activities commenced prior to its enactment;

(3) that the Government can show violations of SLCRMA by claiming violations of the coastal use guidelines;

(4) that the Parish has standing to pursue claims for the oil and gas activities at issue, which are "uses of state concern;"

(5) that SLCRMA imposes solidary liability; and

(6) that coastal use permits are required for activities subject to the jurisdiction of the Office of Conservation and/or the Louisiana Department of Environmental Quality.

**A. Burden of proof.**

The Court's instructions provide no instruction to the jury as to what elements the Government must prove and does not state at relevant places that the Government bears the burden of proof. These omissions are clear legal error and are directly contradicted by this Court's ruling denying the Government's motion for partial summary judgment on this issue. Judgment (Dec. 30, 2024); Reasons (Jan. 13, 2025).

Louisiana law requires a plaintiff in a civil suit to prove every essential element of its claim by a preponderance of the evidence. *See Reading & Bates Const. Co. v. Baker Energy Res. Corp.*, 96-1276 (La. App. 3 Cir. 5/21/97), 698 So. 2d 413, 422. To prove that Chevron violated SLCRMA's requirements to obtain and comply with coastal use permits, the Parish must prove by a preponderance of the evidence that Chevron was obligated to obtain coastal use permits for

---

[2] In further support of Chevron's objections, and pursuant to Louisiana Code of Civil Procedure article 853, Chevron adopts and incorporates by reference the arguments, undisputed facts, and essential legal elements in Chevron's Motion for Partial Summary Judgment on Plaintiff's Claims for Alleged Harm that Occurred Before the Effective Date of SLCRMA's Coastal Management Program filed September 3, 2024, Chevron's Reply in Support of Motion for Partial Summary Judgment on Claims for Alleged Harm that Occurred Before the Effective Date of SLCRMA's Coastal Management Program filed on November 1, 2024, and Chevron's Motion for Directed Verdict on this issue.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

specific uses under SLCRMA. *See id.* The Parish must also prove by a preponderance of the evidence that Chevron failed to obtain a required coastal use permit for a specific use or violated a specific term or condition contained in a coastal use permit that Chevron did obtain for a specific use. The Parish must further prove by a preponderance of the evidence that Chevron's failure to obtain a coastal use permit for a specific use or violation of a specific term or condition contained in an issued coastal use permit for a specific use caused harm, and the amount of any such harm.

**B. Solidary Liability.**

The jury instructions ignore this Court's ruling dismissing the Parish's claims under SLCRMA for solidary liability, having found that solidary liability is unavailable under SLCRMA.[3] The Government seeks damages to restore areas allegedly damaged by canals and oil and gas exploration and production activities that Texaco transferred to Apache. Yet the instructions do not instruct the jury that it may not award damages to restore areas that were damaged by Apache's operations or that Apache failed to restore.

Alternatively, if the Court is changing its prior judgment and allowing the Parish to bring claims for solidary liability, then the jury should be instructed that it must apportion liability between Apache and Chevron. *See* La. C.C. Art. 1804. This finding is necessary because if Apache and Chevron are solidary obligors, then Chevron is entitled to a credit on any adverse verdict against Chevron since the Government settled its claims against Apache prior to trial. *See* La. C.C. art. 1803 ("Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor."); *Mott v. Brister's Thunder Karts, Inc.*, 95-410 (La. App. 3 Cir. 10/4/95), 663 So. 2d 233, 235(A solidary obligor who has not settled with the obligee is entitled to have the obligee's recovery reduced by the amount of the released obligor's portion of fault or liability.")

**C. Causation.**

The instructions also fail to adequately instruct the jury on causation. This is a case about coastal use permits: whether an individual defendant violated the terms and conditions of a coastal use permit issued to it or whether an individual defendant failed to get a permit for a "use" for

[3] *See* Judgment (Jan. 13, 2025).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

which a coastal use permit was required. The jury should be instructed that it must determine: (1) whether Chevron violated SLCRMA by failing to obtain a coastal use permit when required or violating the terms and conditions of its issued coastal use permits; (2) whether Chevron's violations caused damage; (3) if so, how much damage did that violation cause; and (4) whether any of Chevron's affirmative defenses apply.[4] The jury should further be instructed that it must make these determinations on a permit-by-permit and use-by-use basis.

The instructions do not do this. They make no meaningful attempt to instruct the jury that they must evaluate the Parish's claims on an activity by activity and permit by permit basis and that the jury must evaluate what damages, if any, were caused by each violation. SLCRMA imposes damages, restoration costs, or actual remediation only "*for* uses conducted within the coastal zone without a coastal use permit where a coastal use permit is required or which are not in accordance with the terms and conditions of a coastal use permit." La. Rev. Stat. § 49:214.36(E) (emphasis added). Jury Instruction No. 13 states that "When I say that the Parish has to prove that Chevron/Texaco's violation of SLCRMA caused damage, I don't mean that the law recognizes only one cause of damage. You will have to decide whether the same damage would have occurred if Chevron/Texaco had not violated SLCRMA. If, more likely than not, the same damage *would* have occurred in the absence of a SLCRMA violation, then you should render a verdict for Chevron/Texaco." That is not sufficient. Chevron presented or proffered evidence that the land loss of which the Government complained was caused not by Chevron or Texaco's alleged violations of SLCRMA, but by Acts of God (e.g., hurricanes) and the actions of third parties (e.g., the Army Corps of Engineers and Apache). The instructions fail to inform the jury that it may not award damages for land loss caused by such factors.

The jury should be instructed that it must determine: (1) whether Chevron violated SLCRMA by failing to obtain a coastal use permit when required or violating the terms and conditions of its issued coastal use permits; (2) whether Chevron's violations caused damage; (3)

[4] In further support of Chevron's objections, and pursuant to Louisiana Code of Civil Procedure article 853, Chevron adopts and incorporates by reference the arguments, undisputed facts, and essential legal elements in Chevron's Motion for Partial Summary Judgment on Solidary Liability filed on December 3, 2024, Chevron's Reply in Support of Motion for Partial Summary Judgment on Solidary Liability filed on January 3, 2025 and the Court's judgment on January 13, 2025.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

if so, how much damage did that violation cause; and (4) whether any of Chevron's affirmative defenses apply.[5]

**D. Grandfather Clause.**

Jury Instructions 9 and 10 on the "Historical Use Exemption/Grandfather Clause" and on "Applicable Law & Regulations – When a Change is a New Use" are legal error and have been rejected by the federal Fifth Circuit Court of Appeals in *New Orleans v. Aspect Energy*, 126 F. 4th 1047 (5th Cir. 2025).[6]

SLCRMA's text is clear. SLCRMA went into effect on January 1, 1979, but its coastal use permit program did not commence until September 20, 1980.[7] SLCRMA provides that any activity "legally commenced or established" prior to the permitting program's effective date "shall not require a coastal use permit." La. Rev. Stat. § 49:214.34(C)(2). This is an exclusion from SLCRMA's permitting requirements of *all* activities before September 20, 1980, provided that they were "legally commenced or established" within the meaning of SLCRMA. *See* La. Rev. State. § 49:214.30(A)(1) ("No person shall commence a use of state or local concern without first applying for and receiving a coastal use permit."). There can therefore be no liability for failing to obtain a coastal use permit for these activities.

To be "legally commenced or established" before September 20, 1980 within the meaning of SLCRMA, a use must have genuinely begun before the coastal use permit program went into

---

[5] In further support of Chevron's objections, and pursuant to Louisiana Code of Civil Procedure article 853, Chevron adopts and incorporates by reference the arguments, undisputed facts, and essential legal elements in Chevron's Motion for Partial Summary Judgment on Solidary Liability filed on December 3, 2024, Chevron's Reply in Support of Motion for Partial Summary Judgment on Solidary Liability filed on January 3, 2025 and the Court's judgment on January 13, 2025.

[6] Pursuant to Code of Civil Procedure article 853, Chevron adopts by reference the undisputed facts, essential legal elements, and arguments advanced in Chevron's Motion for Partial Summary Judgment on the State and Local Coastal Resources Management Act's Grandfather Clause, Memorandum in Support of Defendants' Motion for Summary Judgment filed on October 31, 2024, Chevron's Reply in Support to Motion for Partial Summary Judgment the State and Local Coastal Resources Management Act's Grandfather Clause filed on November 27, 2024, Chevron's Motion for Partial Summary Judgment on Plaintiff's Claims for Alleged Harm that Occurred Before the Effective Date of SLCRMA's Coastal Management Program filed September 3, 2024, Chevron's Reply in Support of Motion for Partial Summary Judgment on Claims for Alleged Harm that Occurred Before the Effective Date of SLCRMA's Coastal Management Program filed on November 1, 2024, and Chevron's Motions for Directed Verdict on Claims Involving Activities Commenced Before September 20, 1980 filed on March 25, 2024 and further argued to the Court on April 1, 2025, all of which address this issue.

[7] *See* La. Rev. Stat. § 49:214.39 ("This Subpart shall become effective on January 1, 1979, except that the coastal use permit program established pursuant to R.S. 49:214.30 shall not commence until thirty days after the adoption of guidelines pursuant to R.S. 49:214.27."). The guidelines were approved by the governor on July 24, 1980, and promulgated in the Louisiana Register on August 20, 1980, with an effective date thirty days later, on September 20, 1980. Louisiana Register 6:493 (Aug. 1980).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

effect. This includes longstanding "established" uses and more recent uses whose commencement was bona fide and not simply a token or sham step towards commencement before the effective date to avoid the new permit requirement. This interpretation accords with the plain text and structure of SLCRMA and with decades of consistent practice by the agency charged with implementing SLCRMA, as confirmed by Government witness Assistant Secretary of the Office of Coastal Management (OCM) Keith Lovell. *See, e.g.*, March 19, 2025 Tr. 231-32 (Lovell has no knowledge of his office ever issuing to anyone a Coastal Use Permit for any activities that began before 1980).

Jury Instructions 9 and 10 are legal error because they add limitations to the application of the grandfather clause that are found nowhere in the text of the statute and that contradict longstanding consistent agency practice. Specifically, the instructions add the following limitations:

1) "When considering whether a use was 'legally commenced or established,' you should consider all the applicable rules and regulations of the Stream Control Commission and the Office of Conversation in effect at the time of Chevron/Texaco's operations, which you heard testimony about during trial."
2) "For activities that would normally require a coastal use permit but were exempt from that requirement only because they predated September 20, 1980, the coastal user must apply for a coastal use permit for changes which would significantly increase the impacts of the activity."

These atextual limitations reflect an erroneous interpretation of the grandfather clause and should not be included in the jury instruction.

The first atextual limitation requiring the jury to "consider all the applicable rules and regulations of the Stream Control Commission and the Office of Conversation in effect at the time of Chevron/Texaco's operations" would improperly turn SLCRMA into an all-purpose mechanism for retroactive enforcement of *other* rules and regulations besides SLCRMA and thus would drastically expand SLCRMA's reach beyond that intended by the legislature. SLCRMA does not bootstrap pre-1980 violations of other laws, rules, or regulations into post-1980 enforcement actions under SLCRMA. Any past violation of a pre-1980 law, rule, or regulation can and should

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

be dealt with under the appropriate enforcement provisions of those authorities, e.g., Title 30's enforcement provision for violation of Office of Conservation regulations, La. Rev. Stat. § 30:14 (1979), not under SLCRMA's permitting scheme. This instruction also erroneously implies that the grandfather clause turns on compliance with other laws, even beyond the Stream Control Commission and Office of Conservation rules and regulations expressly mentioned, and fails to explain that compliance with any law other than SLCRMA is irrelevant to the application of the grandfather clause. What's more, the Government expressly disclaimed all claims under these laws in its Petition. *See* Pet. ¶ 33(t)(v). The Government cannot have it both ways. It cannot, on one hand, allege that Chevron only violated SLCRMA then say, on the other, that it violated other laws.

The second atextual limitation requiring a user to "apply for a coastal use permit for changes which would significantly increase the impacts of the activity," likewise does not appear in the statutory text. The Government has argued to this Court that this supposed required is derived from the federal Final Environmental Impact Statement (FEIS), but the Parish's counsel conceded at trial that the FEIS is not law. *See* Hearing Transcript:13:11 (Mr. Carmouche:… "we all know the FEIS is not the law…"(Feb. 10, 2025)). The instruction is improper for that reason alone. Moreover, in a related case, the federal Fifth Circuit Court of Appeals unambiguously rejected the argument that "the FEIS provides a 'gloss' as to how SLCRMA's Historical-Use Exception should be interpreted" and found it "dubious." *New Orleans*, 126 F. 4th at 1053. The Fifth Circuit found that the FEIS "was not created or enacted by the Louisiana legislature," "says nothing about the intent of SLCRMA's framers," and "do[es] not impose substantive environmental obligations on agencies or third parties," and found that it does not "displace the unambiguous text of SLCRMA." *Id.*

The Government has further argued here and in the related Fifth Circuit case that the grandfather clause's application to "individual, specific uses" supports a limitation based on significant increases in the impacts of an activity. That phrase provides no such support. It merely makes clear that the grandfather clause applies only to particular uses, not entire classes of uses. For instance, a person who dredged a particular canal before September 20, 1980 can rely on the grandfather clause only as to that "individual specific" canal; he cannot claim that because he was

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

engaged in canal-dredging generally before 1980, the grandfather clause applies to all canals he may dredge in the future. Nothing about the phrase "individual specific uses" remotely suggests that a pre-1980 canal that undergoes natural erosion somehow is not the same "individual specific" canal.

Jury Instruction Number 10 cites La. Admin. Code tit. 43, Part I, § 723(D)(1)(a). But that provision says nothing about whether or when a coastal use permit is required for activities that are exempt from the coastal use permit requirement "because they predated September 20, 1980." To the contrary, that provision addresses changes in uses that are *not* exempt. It is entitled "Modification, Suspension or Revocation of Permits," indicating that it addresses uses that have received a coastal use permit that can be "modifi[ed]," "suspen[ded]" or "revo[ked]," *i.e.*, uses that are not exempt. And it refers to "changes in the *permitted* use" and "[c]hanges which would significantly increase the impacts of a *permitted* activity," *i.e.*, uses and activities that have received permits and thus are *not* exempt from SLCRMA. On its face, this provision is inapplicable to uses that are exempt because they predated September 20, 1980. And the guidelines make clear that they shall not be "interpreted so as to require permits for specific uses legally commenced or established prior to the effective date of the coastal use permit program nor to normal maintenance or repair of such uses." 43 La. Admin. Code Pt I, 701(J).

Reading such a requirement into the grandfather clause would render the clause unconstitutionally vague. A user of the coastal zone would have no way to know when a change would increase the impacts of its activity sufficiently to create binding legal obligations that could subject the user to massive liability in damages. And reading the grandfather clause to require a permit for changes that would result in *any* increase in impacts whatsoever would impermissibly render the clause a nullity. The federal Fifth Circuit correctly rejected any requirement based on significant increases in impacts. *New Orleans*, 126 F. 4th 1047 (dismissing the City of New Orleans' SLCRMA claims premised on "erosion and canal widening" of canals that were constructed before 1980).

Instructing the jury that it can impose liability for failing to obtain a coastal use permit for activities that commenced before September 20, 1980, when the implementing agency stated publicly for decades that no permit was required for such activities would violate the fair notice

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

requirements of the Due Process clauses of the U.S. and the Louisiana Constitutions. And the agency practice that was incorrectly excluded at trial further supports Chevron's affirmative defense of detrimental reliance. It was legal error to dismiss Chevron's affirmative defense to any extent on directed verdict, and it is legal error to fail to instruct the jury as to the affirmative defense of detrimental reliance.

**E. Activities Regulated By Other Agencies and Subject to In Lieu Permits.**

The instructions further err because they fail to tell the jury that not all oil and gas activities require coastal use permits and instead suggest (incorrectly) that all oil and gas operations did require such permits. This instruction is plainly contradicted by SLCRMA.

SLCRMA expressly provides that "[p]ermits issued pursuant to existing statutory authority of the Office of Conservation in the Department of Natural Resources for the location, drilling, exploration and production of oil, gas, sulphur or other minerals shall be issued *in lieu of* coastal use permits . . . ." La. Rev. Stat. § 49:214.31(B) (emphasis added). Since long before SLCRMA's enactment, certain well-related activities, including drilling and plugging and abandonment of wells, have been subject to the Office of Conservation's jurisdiction. *See, e.g.*, *id.* §§ 30:4(A), 204 (drilling permits) (1979); Statewide Order 29-B, §§ II-III, XIX (drilling permits and permits to plug and abandon wells) (as of Jan. 1, 1979); *see also Nunez v. Wainoco Oil & Gas Co.*, 488 So. 2d 955, 961-62 (La. 1986) (Conservation "has the general power and 'authority over all persons and property necessary to enforce effectively the provisions of this Chapter [La. R.S. 30:1 *et seq.*] and all other laws relating to the conservation of oil and gas,'" and to make "whatever rules, regulations, and orders are necessary" to enforce the conservation laws). The Parish's claim that Chevron violated SLCRMA by purportedly improperly plugging and abandoning wells is thus entirely baseless, as such activities are not subject to SLCRMA's coastal use permitting requirements.

SLCRMA's regulations provide:

> In-Lieu Permits. **Coastal use permits shall not be required** for the location, drilling, exploration and production of oil, gas, sulphur and other minerals subject to regulation by the Office of Conservation of the Department of Natural Resources as of January 1, 1979. The parameters and procedures of the in-lieu permit process are as provided for under existing Memorandum of Understanding between

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

> the Coastal Management Section and the Office of Conservation and the rules and procedures of the Office of Conservation.

LAC 43.I.723(A)(3) (emphasis added).

This regulation references the Memorandum of Understanding ("MOU") executed by OCM and Conservation at the time of SLCRMA's enactment. As part of its implementation, SLCRMA required the OCM to "establish a coordinated coastal permitting process by means of *binding interagency agreements*." *Id.* at § 49:214.33(B) (emphasis added). To effectuate that interagency-cooperation requirement, OCM entered into several interagency agreements, including with the Office of Conservation on July 8, 1980.

In that MOU, Conservation and OCM—consistent with SLCRMA's text—expressly agreed that "[i]n-lieu permits are to be implemented by [Conservation]," and, specifically, that Conservation "shall have the responsibility for permitting activities occurring within the boundary of the coastal zone as set forth in [SLCRMA] for which [Conservation] issued permits as of January 1, 1979, for the location, drilling, exploration and production of oil, gas, sulphur and other minerals." MOU ¶ 1. The MOU further states "[i]t is the intent of Section 213.12 B of Louisiana R.S. 49 *that coastal use permits are not required for these activities*." *Id.* (emphasis added).

The MOU specifically delineated the agencies' respective responsibilities, identifying the activities subject to in-lieu permits issued by Conservation and the activities subject to coastal use permits issued by OCM. As relevant here, the MOU states that "[t]he following list delineates those activities subject to an in-lieu permit issued by [Conservation]": "[o]il & gas activities subject to regulation pursuant to La. Rev. Stat. §§ 30:1-36, 204, 205, 213, and 215 and as provided in statewide orders 29-B, 29-E, 29-H, & 28-J."

In sum, SLCRMA provided that oil and gas activities regulated by Conservation would remain in the jurisdiction of Conservation, and that those operations and activities—including the plugging of abandoned wells—would be subject to Conservation permits "in lieu of" coastal use permits. The instructions should be rejected because they omit any reference to Conservation's exclusive jurisdiction of certain oil and gas activities and are based on an incorrect legal premise.[8]

---

[8] Pursuant to Code of Civil Procedure article 853, Chevron adopts by reference the undisputed facts, essential legal elements, memoranda in support, and arguments advanced in Chevron's Motions for Partial Summary Judgment on Subsidence (Sept. 3, 2024), Pits (Dec. 20, 2024), and Produced Water (Dec. 2024).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

**F. Coastal Use Guidelines are not "laws" or "regulations" applicable to coastal users.**

The Court's instruction that numerous coastal use guidelines are "laws" or "regulations" applicable to coastal users is legal error and ignores SLCRMA's plain language. By their plain definition, the coastal use guidelines impose obligations only on OCM; they do not impose obligations directly on users of the coastal zone. SLCRMA unambiguously gives the guidelines a specific and limited role: They "shall serve as criteria" for *the Department* to use in "issuing" and "conditioning" permits. La. Rev. Stat. § 49:214.27(B)(2). After the OCM issues a permit, the activity must be conducted in accordance with the permit's terms and conditions. *Id.* § 49:214.36(D). If it is, then the activity "shall be considered in full compliance with the purposes and provisions of [SLCRMA]." *Id.* § 49:214.32(E). Accordingly, the jury should not be instructed that Chevron is liable under SLCRMA for violating the guidelines. Chevron can only be held liable for violating the terms and conditions in their permits or for failing to get a permit when a permit is required by SLCRMA. *Id.* § 49.214.36(E).[9]

**G. Uses of state concern.**

The instructions also erroneously instruct the jury that the Parish can pursue claims for violations of uses of state concern. SLCRMA does not allow the Parish to bring claims for uses of state concern.[10]

**H. Affirmative defenses.**

The jury instructions also fail to include any instruction regarding the numerous affirmative defenses pled by Chevron. Adequate jury instructions are those which fairly and reasonably point out the issues and provide correct principles of law for the jury to apply to those issues. *Adams,* 983 So. 2d at 804. If the trial court omits an applicable, essential legal principle, its instruction

---

[9] Pursuant to Code of Civil Procedure article 853, Chevron adopts by reference the undisputed facts, essential legal elements, and arguments advanced in Chevron's Motion for Partial Summary Judgment on Claims Alleging Violations of Guidelines Issued by the Louisiana Department of Natural Resources, Statement of Undisputed Facts, Statement of Essential Legal Elements, and Memorandum in Support filed on October 23, 2024, Chevron's Memorandum in Opposition to the Parish's Motion for Partial Summary Judgment Declaring that the Louisiana Coastal Program Requires Restoration of Mineral Exploration and Production to Original Condition filed on October 19, 2024, Chevron's Reply Memorandum in Support of Motion for Partial Summary Judgment on Claims Alleging Violations of Guidelines Issued By The Louisiana Department of Natural Resources filed November 26, 2024, Chevron's Motion for Directed Verdict filed and argued on March 25, 2025.

[10] Pursuant to Code of Civil Procedure article 853, Chevron adopts by reference the arguments advanced in Chevron's Amended Peremptory Exception of No Cause of Action filed on December 20, 2016 and Reply in Support of Chevron's Peremptory Exception of No Cause of Action on February 8, 2018, addressing this issue.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

does not adequately set forth the issues to be decided by the jury and may constitute reversible error. *Id.* Therefore, the jury should be instructed on the affirmative defenses pled in Chevron's answer and supported with evidence at trial.

## II. Specific Objections to the Parish's Proposed Jury Instructions.

In addition to the general objections identified in Section I, Chevron objects to the following statements in the Parish's proposed Jury Instructions.

### A. Chevron objects to the Court's Jury Instruction No. 1 – General Instruction for SLCRMA Claims – because it contains incorrect statements of law and is incomplete and misleading.

*1. Jury Instruction No. 1 is an incomplete statement of the purpose of SLCRMA.*

The Court's instruction includes a summary of SLCRMA's purposes, but excludes Section 4 and Section 6, which state that SLCRMA's purposes also are "to employ procedures and practices that ***resolve conflicts among competing uses within the coastal zone*,**" La. Rev. Stat. 49:214.22 at § 4 (emphasis added), and "to develop and implement a ***reasonable and equitable*** coastal resources management program," *id.* at § 7 (emphasis added). Chevron objects to this incomplete description of SLCRMA's purposes.

*2. Jury Instruction No. 1 incorrectly instructs the Jury that Plaquemines Parish has the right to bring claims for uses of state concern.*

The Court's instruction that Plaquemines Parish has the right to bring suit for uses of state concern is legal error for the reasons set forth in Section I.G of these Objections.

*3. Jury Instruction No. 1 incorrectly instructs the Jury that SLCRMA's permit requirements are "in addition to any other permits or approvals required by law."*

Jury Instruction 1 is legal error because SLCRMA expressly states numerous circumstances in which no coastal use permit is required when other permits have been issued, including by the Office of Conservation or the state agencies addressing discharges into state water, as explained in Section I.E of these Objections.

*4. Jury Instruction No. 1 incorrectly states that the Parish is entitled to bring a "judicial enforcement action."*

Jury Instruction 1 incorrectly states that SLCRMA authorizes the Parish to bring a so-called judicial enforcement action. Chevron objects to this instruction which seeks to make a purported distinction between judicial and administrative actions which is found nowhere in SLCRMA and

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

is an erroneous characterization of SLCRMA. In addition, this instruction is legal error because it assumes that a SLCRMA claim can be filed without exhaustion of administrative remedies which is incorrect.

5. *Jury Instruction No. 1 incorrectly instructs the Jury on damages.*

Chevron object to Jury Instruction 1's instructions on damages for the reasons set forth in these Objections. Further, Jury Instruction 1 incorrectly instructs the jury it can award both Plaquemines Parish and the State damages for a violation of SLCRMA, which is an incorrect statement of the law. Jury Instruction 1 does not track the language of the SLCRMA, leaving the impression that certain damages must be awarded. *See* La. Rev. § 49:214.36(E) ("A court may impose civil liability and assess damages; order, where feasible and practical, the payment of restoration costs; require, where feasible and practical, actual restoration of the areas disturbed…"). Jury Instruction 1 is legal error because its phrasing suggests that the Parish can recover both damages and restoration costs when SLCRMA, La. Rev. Stat. §49:214.36, is clear that the Parish cannot recover both. In addition, the Government concedes the only uses at issue are uses of state concern, and SLCRMA sets forth how all monetary damages awarded are allocated between the State and the Parish. *See* La. Rev. Stat. § 49:214.36(J). Finally, Jury Instruction 1's instructions on damages are misleading and prejudicial because they suggest that the Government is seeking actual restoration when it is not and because it fails to state that damages can be recovered only if it is proven that Chevron's alleged specific violation of SLCRMA caused the alleged damages.

6. *Jury Instruction No. 1 contains statements that are legally wrong, irrelevant, prejudicial, and which will serve only to confuse the jury.*

There are also numerous statements in Jury Instruction No. 1 which are legally wrong, irrelevant, and confusing.

First, Jury Instruction 1's statements defining the coastal zone and instructing the jury that portions of Plaquemines Parish are in the coastal zone are incorrect, incomplete, and unnecessary. Chevron does not dispute that SLCRMA is one of the laws that may govern some of the uses in the Case Area in this case. Extraneous statements such as these will serve only to confuse the jury.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Second, the statement that "oil and gas activities" are "classified as uses of state concern" is an incomplete statement of law. "Uses of state concern" are defined as "those uses which directly and significantly affect coastal waters and which are in need of coastal management, and which have impacts of greater than local significance or which significantly affect interests of regional, state, or national concern." La. Rev. Stat. § 49:214.25(A)(1). This statement further ignores the numerous exceptions and exemptions to SLCRMA's permitting requirements, including the fact that SLCRMA does not require coastal use permits for certain oil and gas exploration and production activities subject to Office of Conservation's jurisdiction. *See* Section I.E; *supra*.

Third, the Parish's proposed instruction that LDENR "and the State" of Louisiana allege that Chevron violated SLCRMA is contradicted by the LDENR and the AG's discovery responses and stipulations entered in this case. Indeed, both LDENR and the AG have continually stated they have no evidence that Chevron violated SLCRMA in any matter. *See, e.g.*, the State of Louisiana Ex Rel. Liz Murrill, Attorney General's Amended and Supplemental Responses to Chevron's Second Set of Discovery Requests to Plaintiff State of Louisiana (Nov. 13, 2024) (RFA No. 39: Admit that you have made no independent determination of whether Chevron committed the violations alleged by the Parish in this Action. Response: Admitted.) LDENR even filed a stipulation confirming this fact:

> 1. The LDENR stipulates that the LDENR and its employees have no knowledge of or plans to prove any violations against any of the defendants in this case.
>
> 2. The LDNER stipulates that, had its employees been aware of violations of SLCRMA, LDENR would have commenced either this litigation or other enforcement actions.
>
> 3. The LDENR has not initiated any enforcement actions against any of the defendants in this litigation relating to the claims being brought by the Parish of Plaquemines.
>
> 4. The LDENR intervened in this litigation for the limited purpose of monitoring these proceedings as they relate to matters within its jurisdiction.
>
> 5. The LDENR has not hired any experts in this case, and the LDENR will not present evidence, argument or any experts or witnesses at trial.

LDENR Stipulation (Dec. 19, 2024). Keith Lovell, the Director of the Office of Coastal Management, reconfirmed these points in his testimony at trial *See* March 19, 2025 Rough Tr., pp.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

222-227.

The jury instruction should not tell the jury that the State endorses the Parish's claims against Chevron when the State itself contradicts this representation.

**B. Chevron objects to Jury Instruction No. 2 – Coastal Use Permit Requirement – because it contains incorrect statements of law, is incomplete, and is misleading.**

*1. Jury Instruction No. 2 incorrectly assumes that the Government can make claims for violations of the coastal zone regulations.*

Jury Instruction number 2 incorrectly indicates to the jury that SLCRMA provides a cause of action for violations of coastal use guidelines. SLCRMA authorizes enforcement actions in two situations: (1) when a person fails to obtain a coastal use permit required by SLCRMA, or (2) when a person violates conditions in its permit. *See* La. Rev. Stat. § 49:214.36(D), (E); *see also* § 49:214.36(O). The guidelines have no bearing on liability in either situation. Instead, the guidelines govern LDNR's decision-making processes in issuing coastal use permits. They are by definition "**criteria** for the granting, conditioning, denying, revoking, or modifying of coastal use permits" and impose no free-standing requirements on private operators. La. Rev. Stat. § 49:214.27(B)(2) (emphasis added). *See also* General Objection No. I.E.

*2. Jury Instruction No. 2 is incomplete.*

Jury Instruction No. 2 is also incomplete and will leave the jury with the impression that virtually all of Chevron's activities required coastal use permits. Clearly, they did not by SLCRMA's own plain language. The instruction notes several activities that do not require coastal use permits but the jury should be instructed on all the exemptions identified in SLCRMA.

**C. Chevron objects to Jury Instruction No. 3 (Law Applicable to All Uses), No. 4 (Disposal of Wastes), No. 5 (Linear Facilities), No. 6 (Dredged Spoil Deposition), No. 7 (Surface Alterations), and No. 8 (Oil, Gas, and Other Mineral Activities), because they are legally wrong, misleading, and incomplete.**

*1. Jury Instructions Nos. 3 - 8 incorrectly instruct the jury that coastal use guidelines are "laws," "rules," or "regulations" that must be followed.*

The Court's instruction that coastal use guidelines are "laws," "rules," or "regulations" that must be followed by coastal users is legal error for the reasons set forth in Section I.F. of these Objections.

*2. Jury Instructions Nos. 3-8 incorrectly instruct the jury on activities that are subject to a separate permitting regime.*

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

The instructions that coastal use guidelines apply to all activities no matter when such activities commenced is legal error for the reasons set forth in Section I.D. of these Objections.

3. *Jury Instructions Nos. 3-8 incorrectly instruct the jury that the guidelines are criteria applicable to all oil and gas activities.*

The instructions that coastal use guidelines apply to all oil and gas activities when the vast majority fall outside of OCM's jurisdiction and are subject to separate "in-lieu" permitting regimes and other agencies' exclusive regulation is legal error for the reasons set forth in Section I.E. of these Objections.

4. *Jury Instructions Nos. 3-8 are incomplete and misleading.*

Jury Instructions Nos. 3-8 are incomplete and misleading because they do not advise the jury of the entirety of the cited guidelines but cherry-pick the most favorable language for the Government. The jury should not be instructed on the coastal use guidelines other than to hear their statutory definition: that they are criteria used by the LDENR to grant or deny coastal use permits. La. Rev. Stat. § 49:214.27(B)(2). But, if the jury is instructed on the guidelines, they should be instructed on the complete guidelines and not given a slanted and incomplete instruction that favors the Parish.

a. *Jury Instruction No. 3 is incomplete and misleading*

Instruction No. 3 purports to be based on Guidelines Section 701(G), which is a subdivision of Guidelines Section 701, entitled "Guidelines Applicable to All Uses."

Instruction No. 3 is incomplete and misleading because it does not provide the jury with the definition of "maximum extent practicable." That term is defined in guidelines Section 701(H). Section 701(H) states that when a guideline uses "the modifier 'maximum extent practicable," the proposed use is in compliance with the guideline:

> if the standard modified by the term is complied with. If the modified standard is not complied with, *the use will be in compliance with the guideline if the permitting authority finds, after a systematic consideration of all pertinent information regarding the use, the site and the impacts of the use as set forth in guideline 1.6, and a balancing of their relative significance, that the benefits resulting from the proposed use would clearly outweigh the adverse impacts resulting from non-compliance with the modified standard* and there are no feasible and practical alternative locations, methods and practices for the use that are in compliance with the modified standard and:
>
> a) significant public benefits will result from the use, or;

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

b) the use would serve important regional, state or national interests, including the national interest in resources and the siting of facilities in the coastal zone identified in the coastal resources program, or;

c) the use is coastal water dependent.

The systematic consideration process shall also result in a determination of those conditions necessary for the use to be in compliance with the guideline. *Those conditions shall assure that the use is carried out utilizing those locations, methods and practices which maximize conformance to the modified standard; are technically, economically, environmentally, socially and legally feasible and practical; and minimize or offset those adverse impacts listed in guideline 1.7 and in the guideline at issue.*[11]

Instruction 3 should quote Section 701(H) in its entirety.

*b. Jury Instruction No. 4 is incomplete and misleading*

Jury Instruction No. 4 purports to be based on Guidelines Section 715 (Guidelines for Disposal of Waste). Chevron objects to this instruction because it fails to instruct the jury that Texaco cannot be held liable for violating Guidelines Section 715 for the construction or operation of waste disposal activities that occurred before SLCRMA took effect in September 1980. It would violate Due Process to allow the jury to find that Texaco constructed or operated waste disposal facilities in violation of a Guideline that did not exist when the construction and operation occurred.

Chevron further objects that Jury Instruction No. 4 is incomplete and misleading because it omits relevant subsections of Section 715. It fails to instruct the jury that:

- "Best practical techniques" means "those methods or techniques which would result in the greatest possible minimization of the adverse impacts listed in § 701(G) or [this guideline]. Those methods or techniques shall be the best methods or techniques which are in use in the industry or trade or among practitioners of the use, and which are feasible and practical for utilization."[12]

[11] *Pardue v. Stephens*, 558 So. 2d 1149, 1164 (La. App. 1 Cir. Dec. 22, 1989), citing La. Admin. Code tit. 43, Part I, § 701(H) (emphasis added).

[12] La. Admin. Code tit. 43, Part I, § 700.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

- "Feasible and practical" means "those locations, methods, and/or practices which are of established usefulness and efficiency and allow the use or activity to be carried out successfully." [13]
- Subsurface oil and gas production are "Coastal water dependent uses"[14]
- "Maximum extent practicable" has the meaning stated in Guidelines Section 701(H).[15]

*c. Jury Instruction No. 5 is incomplete and misleading*

Jury Instruction No. 5 purports to be based on Guidelines Section 705, "Guidelines for Linear Facilities." Chevron objects to this instruction because it fails to instruct the jury that Texaco cannot be held liable for violating Guidelines Section 705 for planning, designing, location, building, or operating canals before SLCRMA took effect in September 1980. It would violate Due Process to allow the jury to find that Texaco violated a Guideline that did not exist when the planning, designing, location, construction or operation occurred.

Chevron further objects that this instruction includes subsections of Section 705 that are irrelevant and will confuse the jury because the Government did not introduce evidence that could establish a violation. Specifically,

- Instruction No. 5 should not instruct the jury that "B. Linear facilities involving the use of dredging shall be avoided in wetland and estuary areas to the maximum extent practicable." The Government has not identified any new canals that Texaco dredged after SLCRMA went into effect in September 1980. Rather, the canals at issue in this case were dredged before SLCRMA took effect in 1980. It would confuse or mislead the jury to include this instruction and violate Due Process to allow the jury to find that Texaco dredged the canals in violation of a Guideline that did not exist when the dredging occurred.
- Instruction No. 5 should not instruct the jury that "C. Linear facilities involving dredging shall be of the minimum practical size and length." The Government has

[13] La. Admin. Code tit. 43, Part I, § 700.

[14] La. Admin. Code tit. 43, Part I, §§ 711(E), 700.

[15] La. Admin. Code tit. 43, Part I, § 701(H).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

not identified any new canals that Texaco dredged after SLCRMA went into effect in September 1980. Rather, the canals at issue in this case were dredged before SLCRMA took effect in 1980. It would confuse or mislead the jury to include this instruction and violate Due Process to allow the jury to find that Texaco dredged the canals in violation of a Guideline that did not exist when the dredging occurred.

- Instruction No. 5 should not instruct the jury that "I. Linear facilities shall be planed, designed, located, and built using the best practical techniques to minimize disruption of natural hydrologic and sediment transport patterns, sheet flow, and water quality and to minimize adverse impacts on wetlands." The Government has not identified any new canals that Texaco dredged after SLCRMA went into effect in September 1980. Rather, the canals at issue in this case were dredged before SLCRMA took effect in 1980. It would confuse or mislead the jury to include this instruction and violate Due Process to allow the jury to find that Texaco planned, designed, located and built the canals in violation of a Guideline that did not exist.
- Instruction No. 5 should not instruct the jury that "L. The multiple uses of existing canals, directional drilling, and other practical techniques shall be utilized to the maximum extent practicable to minimize the number and size of access canals, to minimize changes of natural systems, and to minimize adverse impacts on natural areas and wildlife and fisheries habitat." The Government has not identified any new canals that Texaco dredged after SLCRMA went into effect in September 1980. Rather, the canals at issue in this case were dredged before SLCRMA took effect in 1980. It would confuse or mislead the jury to include this instruction and violate Due Process to allow the jury to find that Texaco failed to minimize the number, size, or impacts of canals in violation of this Guideline that did not exist when the canals were dredged.

Jury Instruction No. 5 is also incomplete and misleading because it fails to instruct the jury that:

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

- "a canal need not be backfilled if it continues to be used for navigation purposes," and the "navigation purposes" are not linked to the original oil and gas exploration and production purposes for which the canal was originally dredged.[16]
- The obligation to backfill or otherwise restore "upon cessation of use for navigation purposes to the maximum extent practicable" falls upon the entity that owns the linear facility when it ceases to be used for navigation purposes.[17]"navigation projects" are "Coastal water dependent uses."[18]
- "Best practical techniques" means "those methods or techniques which would result in the greatest possible minimization of the adverse impacts listed in § 701(G) or [this guideline]. Those methods or techniques shall be the best methods or techniques which are in use in the industry or trade or among practitioners of the use, and which are feasible and practical for utilization."[19]
- "Feasible and practical" means "those locations, methods, and/or practices which are of established usefulness and efficiency and allow the use or activity to be carried out successfully." [20]
- "Maximum extent practicable" has the meaning stated in Guidelines Section 701(H).[21]

*d. Jury Instruction No. 6 is incomplete and misleading*

Jury Instruction No. 6 purports to be based on Guidelines Section 707, "Guidelines for Dredged Spoil Disposition." Chevron objects to this instruction because it fails to instruct the jury that Texaco cannot be held liable for violating Guidelines Section 707 for the disposition of dredged material before SLCRMA took effect in September 1980. It would violate Due Process

[16] La. Atty. Gen. Op. No. 87-469 (July 8, 1987), 1987 WL 288413; *see also* La. Admin. Code tit. 43, Part I, § 705(N).

[17] La. Admin. Code tit. 43, Part I, § 705(N).

[18] La. Admin. Code tit. 43, Part I, § 700.

[19] La. Admin. Code tit. 43, Part I, § 700.

[20] La. Admin. Code tit. 43, Part I, § 700.

[21] La. Admin. Code tit. 43, Part I, § 701(H).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

to allow the jury to find that Texaco violated a Guideline that did not exist when the construction and operation occurred.

Jury instruction No. 6 is also incomplete and misleading because it omits relevant subsections of Guideline Section 707. It fails to instruct the jury that:

- "navigation projects" and "subsurface mineral extraction" like oil and gas production are "Coastal water dependent uses."[22]
- "Best practical techniques" means "those methods or techniques which would result in the greatest possible minimization of the adverse impacts listed in § 701(G) or [this guideline]. Those methods or techniques shall be the best methods or techniques which are in use in the industry or trade or among practitioners of the use, and which are feasible and practical for utilization."[23]
- "Feasible and practical" means "those locations, methods, and/or practices which are of established usefulness and efficiency and allow the use or activity to be carried out successfully." [24]
- "Maximum extent practicable" has the meaning stated in Guidelines Section 701(H).[25]

*e. Jury Instruction No. 7 is incomplete and misleading*

Jury Instruction No. 7 purports to be based on Guidelines Section 711, "Guidelines for Surface Alteration." Chevron objects to this instruction because it fails to instruct the jury that Texaco cannot be held liable for violating Guidelines Section 711 for surface alterations that occurred before SLCRMA took effect in September 1980. It would violate Due Process to allow the jury to find that Texaco violated a Guideline that did not exist when the construction and operation occurred.

[22] La. Admin. Code tit. 43, Part I, § 700.

[23] La. Admin. Code tit. 43, Part I, § 700.

[24] La. Admin. Code tit. 43, Part I, § 700.

[25] La. Admin. Code tit. 43, Part I, § 701(H).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Chevron further objects that Instruction No. 7 includes instructions on subsections of Section 711 that are irrelevant and will confuse the jury because the Government did not introduce evidence that could establish a violation. Specifically,

- Instruction No. 7 should not instruct the jury that "D. To the maximum extent practicable wetland areas shall not be drained or filled. Any approved drain or fill project shall be designed and constructed using best practical techniques to minimize present and future property damage and adverse environmental impacts." The Government has not entered any evidence regarding wetland areas that were drained or filled by Texaco. Inclusion of this instruction will mislead or confuse the jury.
- Instruction No. 7 should not instruct the jury that "G. Site clearing shall to the maximum extent practicable be limited to those areas immediately required for physical development." The Government has not entered evidence that Texaco cleared trees or vegetation in violation of this provision, so inclusion of this instruction will mislead or confuse the jury.
- Instruction No. 7 should not instruct the jury that "N. To the maximum extent practicable only material that is free of contaminants and compatible with the environmental setting shall be used as fill." The Government has not entered evidence of any "fill" operations undertaken by Texaco, so inclusion of this instruction will mislead or confuse the jury.

Jury instruction No. 7 is also incomplete and misleading because it omits relevant subsections of Guideline Section 711. It fails to instruct the jury that:

- "navigation projects" and "subsurface mineral extraction" like oil and gas production are "Coastal water dependent uses."[26]
- "Best practical techniques" means "those methods or techniques which would result in the greatest possible minimization of the adverse impacts listed in § 701(G) or [this guideline]. Those methods or techniques shall be the best methods or

[26] La. Admin. Code tit. 43, Part I, § 700.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

techniques which are in use in the industry or trade or among practitioners of the use, and which are feasible and practical for utilization."[27]

- "Feasible and practical" means "those locations, methods, and/or practices which are of established usefulness and efficiency and allow the use or activity to be carried out successfully."[28]
- "Maximum extent practicable" has the meaning stated in Guidelines Section 701(H).[29]

*f. Jury Instruction No. 8 is incomplete and misleading*

Jury Instruction No. 8 purports to be based on Guidelines Section 719, "Guidelines for Oil, Gas, and Other Mineral Activities." Chevron objects to this instruction because it does not advise the jury that Section 719 does not apply to canals dredged for oil and gas activities. Rather, canals are "linear facilities" covered by Section 705, "Guidelines for Linear Facilities," a guideline that is addressed in Jury Instruction No. 5.

Chevron further objects to this instruction because it fails to instruct the jury that Texaco cannot be held liable for violating Guidelines Section 719 for oil and gas activities that occurred before SLCRMA took effect in September 1980. It would violate Due Process to allow the jury to find that Texaco violated this Guideline by designing, constructing or operating mineral exploration and production sites before September 1980, when this Guideline did not even exist.

Chevron also objects to instructing the jury on subsections of Section 719 that are irrelevant and will confuse the jury because the Government did not introduce evidence that could establish a violation. Specifically,

- Instruction No. 8 should not instruct the jury that "D. Mineral exploration and production facilities shall be to the maximum extent practicable designed, constructed, and maintained in such a manner to maintain natural water flow, regimes, avoid blocking surface drainage, and avoid erosion." The Government did not introduce evidence of any Texaco mineral exploration and production facilities

[27] La. Admin. Code tit. 43, Part I, § 700.

[28] La. Admin. Code tit. 43, Part I, § 700.

[29] La. Admin. Code tit. 43, Part I, § 701(H).

that affected natural water flow regimes, surface draining or erosion, so inclusion of this instruction will mislead or confuse the jury.

- Jury Instruction No. 8 should not instruct the jury that "E. Access routes to mineral exploration, production, and refining sites shall be designed and aligned so as to avoid adverse impacts on critical wildlife and vegetation areas to the maximum extent practicable." The Government has not identified what "access routes" are at issue, or how any access routes made after September 1980 should have been designed or aligned to avoid adverse impacts on critical wildlife and vegetation areas to the maximum extent practicable. Thus, inclusion of this instruction will mislead or confuse the jury.
- Jury Instruction No. 8 should not instruct the jury that "F. Drilling and production sites shall be prepared, constructed, and operated using the best practical techniques to prevent the release of pollutants or tox substances into the environment." The Government has not identified any oil spills from Texaco's drilling and production sites. They have alleged that there were releases of pollutants in Texaco's produced water discharges and pits, but these are not on the "drilling and production sites," so inclusion of this instruction will mislead or confuse the jury.
- Jury Instruction No. 8 should not instruct the jury that "I. All drilling and production equipment, structures, and storage facilities shall be designed and construed utilizing best practical techniques to withstand all expectable adverse conditions without releasing pollutants." The Government has not entered evidence of any oil spills from Texaco's drilling and production. They have alleged that there were releases of pollutants in Texaco's produced water discharges and pits, but these are not from the "drilling and production" equipment, structures or storage, so this instruction will mislead or confuse the jury.

Jury instruction No. 8 is also incomplete and misleading because it omits relevant subsections of Guideline Section 719. It fails to instruct the jury that:

- The obligation to clear, revegetate, detoxify, or otherwise restored as near as practicable to their original condition "upon termination of operations to the

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

maximum extent practicable" falls upon the entity that is the operator of record "upon termination of operations."[30]

- "Best practical techniques" means "those methods or techniques which would result in the greatest possible minimization of the adverse impacts listed in § 701(G) or [this guideline]. Those methods or techniques shall be the best methods or techniques which are in use in the industry or trade or among practitioners of the use, and which are feasible and practical for utilization."[31]
- "Feasible and practical" means "those locations, methods, and/or practices which are of established usefulness and efficiency and allow the use or activity to be carried out successfully."[32]
- Subsurface oil and gas production are "Coastal water dependent uses."[33]
- "Maximum extent practicable" has the meaning stated in Guidelines Section 701(H).[34]

**D. Chevron objects to Jury Instruction No. 9 – Historical Use Exemption/Grandfather Clause – because it is legally wrong, misleading, and incomplete.**

*1. Jury Instruction No. 9 incorrectly instructs the jury on the interpretation of the Grandfather Clause.*

Jury Instruction No. 9 on the meaning of SLCRMA's grandfather clause is legally wrong for the reasons set forth in Section I.D. of these Objections.

*2. Chevron objects to Jury Instruction No. 9's incorporation of laws pre-dating SLCRMA that are irrelevant and prejudicial.*

Jury Instruction No. 9 incorporates a number of historical state laws related to the regulation of various oil-and-gas activities that were introduced into evidence. This incorporation of Louisiana laws that pre-date SLCRMA is irrelevant to the Government's claims and would mislead and confuse the jury about whether Chevron violated SLCRMA and not these laws. The

[30] La. Admin. Code tit. 43, Part I, § 719(M).

[31] La. Admin. Code tit. 43, Part I, § 700.

[32] La. Admin. Code tit. 43, Part I, § 700.

[33] La. Admin. Code tit. 43, Part I, §§ 711(E), 700.

[34] La. Admin. Code tit. 43, Part I, § 701(H).

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Government has disclaimed all claims based on any laws other than SLCRMA. Petition 33. As explained in Section I.D, SLCRMA is not a "super-statute" that allows for indirect enforcement of all manner of pre-SLCRMA laws and regulations. To the contrary, if an activity violated other laws or regulations before September 20, 1980, the remedy for those violations would be the remedy provided *under those other statutory or regulatory schemes*. *See, e.g.* La. Rev. Stat. §§30:4, 30:6 (providing the Commissioner of Conservation with authority to bring actions to enforce Conservation rules and regulations). It is also not necessary to instruct the jury on these laws. These laws were into evidence by the Government. Both sides offered expert testimony on whether these laws were violated. Incorporating these laws into a suit where the Government brings a sole cause of action unnecessarily confuses the key question for the jury to decide: whether Chevron/Texaco violated SLCRMA's permitting requirements. Moreover, the instruction erroneously instructs the jury that all of the listed rules and regulations are "applicable" and "pertinent."

Even if it were correct to instruct the jury on laws other than SLCRMA, Jury Instruction 9's incorporation of the laws introduced into evidence is improper and prejudicial because it includes provisions that are irrelevant to the operations at issue in this case:

Rules and Regulations of the Stream Control Commission (1941): These rules are inapplicable because the Stream Control Commission amended its rules in 1943, and it is undisputed that Texaco's saltwater discharges did not begin until 1944. The 1941 rules were also superseded by Statewide Order 29-B which went into effect in 1943. The 1941 rules are thus irrelevant to the Government's SLCRMA claims, and the jury should not be instructed on them.

Stream Control Resolution regarding Coastal Parishes (1946): The 1946 Stream Control Commission Resolution was never passed as a regulation and is not the law. *See* 1947 Attorney General opinion ("The resolution does not appear to qualify as a rule or regulation, but if so intended and accepted, it is very largely in conflict with the provisions of Rule 6 of G.P. 600 and is not identified as an amendment of any prior rule or rules."). Moreover, the resolution itself was passed without any evidence being presented to the SCC, subsequent meetings of the LSCC revealed that no evidence was available that directly connected oyster mortality to oilfield discharges, and indeed later versions of the SCC rules made no mention of the 1946 resolution nor

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

any corresponding change. As such, even if the 1946 Resolution purported to have any force or effect (which it did not), any such force or effect would be immediately void under principles of due process and subsequently under Act 240 of 1950, Act 382 of 1966, and subsequent amendments, because it did not go through the requisite administrative procedures to become a "rule" or "regulation." *See also* CDX1718-09964 (June 3, 1947 Letter from Office of Attorney General to James Brown of Stream Control Commission confirming that the resolution never became law).

Stream Control Commission Regulation Requirement for Submission of Reports for Discharge of Industrial Waste (1951): This regulation does not apply to oilfield operations and is therefore irrelevant. Including this regulation in the instruction is inaccurate, misleading, and unduly prejudicial.

Water Quality Criteria and Plan for Implementation by the Stream Control Commission (1968): This Plan should note be incorporated in the instructions. It was never entered into evidence in this case. It is also not a "rule" or "regulation" of the Stream Control Commission.

Stream Control Commission Order (LA Admin Code 33:IX Section 1901) (1968): This order provides that "salt water may be disposed of in normally saline waters, tidally affected waters, brackish waters or other waters unsuitable for human consumption or agricultural purposes." Inclusion of this Order in the instructions is improper because there is no evidence in the record that the waters into which Texaco discharged produced water were not saline or brackish; were not tidally affected; or were suitable for human consumption or agricultural purposes. Quite the contrary: the evidence is undisputed that the waters at the discharge sites were brackish or saline, affected by tides, and too salty to be drunk or used for farming. As a matter of law, agriculture, which comes from the Latin for "field," does not include "aquaculture."

Act 367 of 1940 Regular Session: Act 367 does not independently set forth substantive standards for violations, but rather leaves it to the Stream Control Commission to set forth in detail the substantive standards that would constitute a violation. As such, including a mention of Act 367 in the instructions is duplicative, vague, irrelevant, confusing, and prejudicial.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Finally, even if it were appropriate to list these statutes and regulations (it is not), the Court should list out all applicable statutes and regulations including: the Federal Water Quality Control Improvement Act of 1971.

**E. Chevron objects to Jury Instruction No. 10 – Applicable Law & Regulations – When a Change Is a New Use – because it is legally wrong, misleading, and incomplete.**

Jury Instruction No. 10's instruction to the jury to consider changes which would significantly increase an activity's impacts is legal error for the reasons set forth in Section I.D. of these Objections.

Jury Instruction No. 10's discussion of significant increases in impacts is also incomplete and misleading because it fails to instruct the jury on how much change in impact is required to qualify as "significant" and thus creates a previously non-existent obligation to obtain a coastal use permit.

Jury Instruction No. 10 is also misleading and will confuse the jury because it paraphrases La. Admin. Code tit. 43, Part I, § 723(D)(1)(a), which applies to modification, suspension, or revocation of issued permits. That provision is not relevant to any of the Government's claims. The instruction further erroneously states that this provision applies to activities that are exempt from the coastal use permit requirement.

**F. Chevron objects to Jury Instruction No. 11 – Remedies – because it is legally wrong, misleading, and incomplete.**

Chevron objects to Jury Instruction No. 11 on Remedies because it misstates the law and fails to provide the jury with sufficient guidance for determining the measure of damages that may be awarded.

1. *Jury Instruction No. 11 lacks guidance on determining the measure of damages.*

Jury Instruction No. 11 is deficient because it does not instruct the jury that it can only award damages *caused by* Chevron's violations of SLCRMA. The remedies available under SLCRMA tie enforcement the harm caused by a violation. That is, even if a violation is found, the jury may determine the violation did not cause any damage or harm. Nevertheless, the instruction states that "[t]he Parish and State are entitled to recover restoration costs in an amount equal to the actual cost of restoration, to the maximum extent practicable, of any areas disturbed by the conduct

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

of any uses of the coastal zone without a coastal use permit that was required by the coastal management law, or by any conduct that violated the terms and conditions of a coastal use permit that was issued under the coastal management law." The effect of this instruction is that money could be awarded against Chevron even if no damages (or harms) were caused by the specific permitting violation, but rather by other compliant uses or even other users. Such a result would be the equivalent of a statutory penalty (or sanctions), which the Parish has disavowed in this action. *See* Pet. 33.

Further, this instruction will mislead the jury into believing it must award monetary damages even if it determines a violation did not cause any damage to the Case Area. The permissible remedies under SLCRMA's enforcement statute are discretionary, not mandatory. Subsection E states civil liability and damages "may" be imposed. La. R.S. § 49:214.36(E). The instruction fails to instruct the jury that it may award no damages if there is no harm or no restoration would be required.

This instruction is further incorrect because it instructs the jury that for violations based on failure to obtain a required coastal use permit, it must award damages for "all of the damage and harm Chevron/Texaco would have been required to repair if it had obtained a permit as required." This instruction erroneously fails to instruct the jury that restoration costs are discretionary and can only be awarded where restoration is "feasible and practical," La. R.S. § 49:214.36(E).

2. *Jury Instruction No. 11 fails to tell the jury it cannot award speculative damages*

The Government has based its restoration damages on two "plans" which ostensible purport to restore the Case Area to original condition. SLCMRA damages thus are measured in the form of the cost to restore harm caused by a SLCRMA violation. *Id.*; *cf. Ivory v. Safeway Ins. Co. of Louisiana,* 2019-521, p. 14 (La. App. 3 Cir. 12/18/19), 287 So.3d 807, 816 (tort action explaining that "the measure of damage is the cost of restoring the property to its former condition"). These restoration damages must be proven "with relative certainty," *Duncan v. Bartholomew,* 11–0855, p. 9 (La. App. 4 Cir. 3/14/12), 88 So.3d 698, 707, because they are special damages. Special damages are those that have a "ready market value," meaning that their amount can be calculated with a high degree of accuracy. *Watson v. Hicks,* 15–0046, p. 21 (La. App. 4 Cir.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

5/27/15), 172 So.3d 655, 672; *see also Smith v. Escalon,* 48,129 (La.App.2d Cir.6/26/13), 117 So.3d 576. Jury Instruction No. 11 is deficient in that it fails to tell the jury it cannot award restoration damages which are "speculative" or which have not been proven "with relative certainty."

3. *Jury Instruction No. 11 improperly instructs the jury that restoration to original condition is required.*

Jury Instruction No. 11 instructs that "the coastal use guidelines state that 'Mineral exploration and production sites shall be cleared, revegetated, detoxified, and otherwise restored as near as practicable to their original condition upon termination of operations to the maximum extent practicable.'" It similarly instructs that "[a]reas modified by surface alteration activities shall, to the maximum extent practicable, be revegetated, refilled, cleaned, and restored to their predevelopment condition upon termination of the use," and "[a]reas dredged for linear facilities [must] be backfilled or otherwise restored to the pre-existing conditions upon cessation of use for navigation purposes to the greatest extent practicable." The coastal use guidelines govern the issuance of permits and development of permit conditions by regulators, but do not, themselves, create obligations for users. The instruction therefore reads into SLCRMA obligations that are not in its text and do not exist.

The instruction is also misleading and incomplete because it erroneously implies that Chevron is liable for restoration costs even if Chevron was not the operator of record at the time of "termination of operations" or "termination of the use."

The instruction also erroneously states that "Original condition means the condition at the commencement of the use." That statement instructs the jury to award damages for harms that occurred before the existence of the coastal use permit program and that thus necessarily could not have been caused by any failure to obtain a coastal use permit or violation of the terms of a coastal use permit. *See also* General Objections, *supra.*

The instruction regarding original condition is inappropriate for the reasons set forth in Section I.F of these Objections.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

4. *Jury Instruction No. 11 could result in double recovery.*

Jury Instruction No. 11 improperly implies that the jury can award "restoration costs" to *both* the Parish and the State, and thus award double recovery.

**G. Chevron objects to Jury Instruction No. 12 – Use of Funds- because it is irrelevant, misleading, and an incorrect statement of the law.**

A jury instruction regarding how any money awarded for damages will be applied, including restoration costs, is unnecessary in this case and prejudicial.

The jury instruction misleads the jury into believing 100% of any monies awarded will be used for the remediation plans the jury deems appropriate, if any. It further misleads the jury because it could be read to suggest that Plaquemines Parish will directly receive money awarded in this litigation. This is a misstatement of the law. The Parish has conceded the only "uses" at issue in this litigation are uses of state concern. Thus, any monetary damages awarded fall under monies collected by the State of Louisiana and are allocated pursuant to the explicit provisions in SLCRMA, which dictates the funds be placed in the State's Coastal Protection and Restoration Fund (75%), which are then directed to projects consistent with "integrated coastal protection, including coastal restoration, hurricane protection, and improving the resiliency of the coastal area," and the remaining funds (25%) are allocated to local government mitigation banks. La. R.S. § 49:214.36(J), (O)(2).

This instruction is designed only to appeal to the jurors' self-interests as Parish citizens who may be personally affected by hurricanes or coastal protection. Statements that "encourage the jury to resolve issues by passion or prejudice are improper," and should be excluded. *See Lavigne v. Allied Shipyard, Inc.*, 2018-0066 (La. App. 4 Cir. 1/15/20), 289 So. 3d 1088, 1104.

The Parish has only pled claims under SLCRMA and, while it is unnecessary for the jury to know how damage awards are allocated after verdict, if the Court determines an instruction is necessary, the instruction must comply with SLCRMA. A jury instruction explaining to the jury how monies awarded as damages must use the entirety of the applicable language in SLCRMA's enforcement statute, which states:

> J. The monies collected by the state under the provisions of this Section shall be deposited as follows:

> (1) The monies collected by the secretary for violations relating to use of state concern shall be used for the following purposes only in the proportions stated:
>
> > (a) After deducting the costs to reimburse the Department of Natural Resources for the expenses incurred enforcing the provisions of this Subpart, seventy-five percent of the monies collected shall be placed in the Coastal Protection and Restoration Fund established in Article VII, Section 10.2 of the Constitution of Louisiana and used for projects that are consistent with Paragraph (O)(2) of this Section.
> >
> > (b) Twenty-five percent of the monies collected shall be placed in local government mitigation banks established in accordance with R.S. 49:214.41 and the rules and regulations adopted thereunder. If there is no local government mitigation bank for the area in which the adverse impact is located, the monies shall be deposited into a restricted fund administered by the parish governing authority of the parish or parishes in which the adverse impact related to the use is located. These funds shall be used only for projects consistent with Paragraph (O)(2) of this Section within or for the benefit of areas within the geographic borders of that parish.

La. Rev. Stat. Ann. § 49:214.36(J). Subsection (O)(2) states:

> (2) Any monies received by any state or local governmental entity arising from or related to a state or federal permit issued pursuant to R.S. 49:214.21 et seq., 33 U.S.C. 1344, or 33 U.S.C. 408, a violation thereof, or enforcement thereof, ***or for damages or other relief arising from or related to any of the foregoing, or for damages or other relief arising from or related to any use*** as defined by R.S. 49:214.23, shall be used for integrated coastal protection, including coastal restoration, hurricane protection, and improving the resiliency of the coastal area.

La. Rev. Stat. Ann. § 49:214.36(O) (emphasis added).

### H. Chevron objects to Jury Instruction No. 13 – Causation - because it is incomplete, misstates the law, is misleading, and is contrary to the Government's concessions at trial.

Jury Instruction 13 is incomplete and misstates the law on causation. To satisfy the element of causation, the Government must prove that any damage suffered was a direct and immediate consequence of a specific SLCRMA violation. *See* 6 Saul Litvinoff & Ronald J. Scalise Jr., *Louisiana Civil Law Treatise: Law of Obligations* § 12.21 (2d ed. 2016) ("[E]ven a defendant in bad faith is liable for only the direct and immediate consequences of his wrongful act."); *Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991) ("Cause in fact is generally a 'but for' inquiry; if the plaintiff probably would have not sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact."). Instruction 13, however, does not include such an instruction. It instead instructs the jury that it can find causation if it finds that "a violation by Chevron/Texaco was a cause of damage," without requiring the jury to link any specific SLCRMA

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

violation to any specific damage. As a result, the instructions misleadingly tells the jury that it does not need to find that specific damage was caused by a specific violation.

Instruction 13 also misstates the law and misleads the jury by instructing the jury that, if it finds a SLCRMA violation by Chevron/Texaco was a cause of damage, then it "must apply the restoration standard required by the statute to address the damage." Because the restoration standard included elsewhere in the instructions instructs the jury to restore sites to the maximum extent practicable without regard for who or what caused the damage, this instruction misleads the jury into believing that Chevron is responsible for all restoration damages if it caused any of the damage requiring restoration. The instruction is thus highly prejudicial.

The failure to properly instruct on causation is particularly prejudicial because the Government seeks to hold Chevron solidarily liable. To the extent that SLCRMA authorizes solidary liability (it does not, *see* Section I.B.), the instructions must provide opportunity for the jury to determine the responsibility of other operators in the Case Area. *See* La. C.C. Art. 1804.

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

**CHEVRON'S OBJECTIONS TO THE VERDICT FORM**

The verdict form is deficient in several respects and would lead to significant errors in this proceeding. Chevron objects to the verdict form on the grounds set forth in its objections to the jury instructions and on the following grounds. Specifically, Chevron urges the Court should have adopted in proposed verdict form filed into the record on January 16, 2025, which Court has refused issue a ruling on despite being required to do so under Louisiana Code of Civil Procedure article 1793("The court ***shall*** inform the parties of its proposed action on the written requests...")

Chevron objects to Interrogatory 1 on several grounds. Initially, without context, the Interrogatory asks whether a series of activities were "illegally commenced or established before September 30, 1980." This interrogatory should instead track the language of the instruction on the grandfather clause and ask: "Do you find that the following activities were not 'legally commenced or established' before September 20, 1980?" In addition, as drafted, the Interrogatory incorrectly assumes that all the listed activities require coastal use permits and will mislead or confuse the jury. Chevron also objects to the use of a category called "Activities associated with the production of oil and gas" in Interrogatories Nos. 1, 2, and 3. The other categories in the list are "Activities associated with the production of oil and gas" and it is unclear what activities this general phrase refers to, necessarily confusing and potentially misleading the jury. Chevron also objects to the category in the list labeled "Equipment." "Equipment" is not an activity, and it is unclear what this word means, necessarily confusing and potentially misleading the jury.

Chevron objects to the failure of Interrogatories Nos. 1 through 5 and 7 to require the jury to make liability and damages determinations on a permit-by-permit basis. The Court recently confirmed the need to proceed permit-by-permit and use-by-use in its judgment regarding the burden of proof motions for summary judgment. *See* Judgment (Dec. 30, 2024) and Reasons (Burden of Proof) (Jan. 13, 2025). This level of specificity will be particularly important in assessing whether any error occurs in the verdict. For example, if the jury's finding of liability against Chevron is based on its determination that Chevron violated a specific coastal use permit or failed to obtain a required permit for a specific use, it will be important for the record to be clear on that point so that review can be taken to determine whether that specific permit was violated or required and what specific damages were caused by that permit violation *See Safeco Ins. Co. of*

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

*Am. v. Chrysler Corp*., 2001-1641 (La. App. 3 Cir. 7/31/02), 834 So. 2d 1026, 1043-44 (holding jury form was "so inadequate as to render it an error of law" when the form was "overly vague and broad and did not clearly set forth the elements of liability" precluding the court from having substantial certainty on the particular findings). An appropriate verdict form would have the jury award an amount of damages against Chevron only if Chevron is found to have committed a SLCRMA permitting violation and that particular violation caused damage. And the amount awarded for such a violation would be limited to the amount of damages Chevron caused as a result of the particular permit violation. The verdict form fails to require the appropriate causal connection between a particular violation and a particular amount of damage caused by that violation – and then *compounds* the problem by asking the jury to state a *total* amount of damage in three separate damage interrogatories.

Chevron objects to Interrogatory No. 2 which asks the jury to determine whether coastal use permits were required for a list of activities in the Case Area. The general question whether a permit is required for a particular use at a particular time in the Case Area is a question of law for the Court, not a question of fact. And the specific question whether a permit applies to a specific use turns on numerous questions of law. Further, to the extent there are factual questions that must be resolved to determine whether a coastal use permit is required, the interrogatory would have to ask such questions on a use by use basis and it does not. As noted above, that by itself is a ground for objection to this interrogatory. In addition, Chevron objects to Interrogatory No. 2 because it fails to specify that the jury should consider whether Chevron was required to obtain a coastal use permit only for the period after September 20, 1980 and it fails to instruct that the jury should not consider the question for any activities in the Case Area that were legally commenced or established before September 20, 1980 or that were regulated by the Office of Conservation or the Stream Control Commission. Chevron further objects to Interrogatory No. 2 because there are multiple reasons a particular use may be exempt from the coastal use permit requirement and this interrogatory fails to require the jury to indicate the reason it determined that a permit was required for any specific use.

For the reasons set forth in General Objection I.D and in the specific objections to proposed Jury Instruction No. 9, Chevron was not required to obtain coastal use permits for activities

commenced or established before 1980. Moreover, assuming that the grandfather clause requires that activities commenced or established before 1980 were required to have complied with applicable laws, the Interrogatory fails to so state. Instead, it contains the misleading, prejudicial, and erroneous assumption that Chevron is required to obtain a coastal use permit for all operations before 1980, without regard to whether they were permitted or otherwise in compliance with applicable law.

Chevron objects to Interrogatory No. 3 because it erroneously assumes that coastal use permits are required for discharges of produced water, use and closure of pits, activities associated with the production of oil and gas, and equipment. For the reasons set forth in General Objection No. I.E, no coastal use permits were required for such uses. In addition, neither activities associated with oil and gas production nor equipment are uses of the coastal zone that require a coastal use permit. This Interrogatory improperly assumes and implies that production itself requires a coastal use permit. That is incorrect.

Chevron objects to Interrogatory No. 4 because it fails to require the jury to identify the specific permit and the specific term or condition of that permit that it finds was violated.

Chevron objects to Interrogatory No. 6 because it erroneously assumes that Chevron had an obligation to obtain a coastal use permit for pit closures. Chevron further objects to Interrogatory No. 6 because it implies that the only relevant Government representations that a coastal use permit is not required are representations related to pit closures. To the contrary, the Government's representations that coastal use permits are not required for numerous activities are relevant to Chevron's lack of obligation to obtain a coastal use permit for those activities.

Chevron further objects to Interrogatories Nos. 3 through 7 because they fail to instruct the jury that only the last operator of the well sites in the Case Area is responsible for the closure and restoration of that site. This omission is misleading and prejudicial to Chevron.

Chevron objects to Interrogatory No. 7 because it erroneously allows the jury to award money to restore the damage caused regardless of whether the restoration is feasible or practical or satisfies the required balancing of costs and benefits. Chevron further objects to Interrogatory No. 7 because it does not require the jury to tie damages to specific violations of SLCRMA, *i.e.*, to specific uses alleged to have violated a coastal use permit or to have required a coastal use

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

permit where Chevron failed to obtain one. *See* Objections to Interrogatories 1-4 *supra*. Likewise, it does not require the jury to award restoration damages only for damages directly caused by those specific permit violations. This is an immediate consequence of Interrogatories Nos. 2 and 4 allowing the jury to find that Chevron caused damage in the Case Area without also requiring the jury to determine the portion of the damage caused by other factors or other actors. The jury may not as a matter of law award damages to restore areas that were damaged by Apache's operations or that Apache failed to restore. Nor may the jury award damages to restore harm caused by Acts of God, including hurricanes, or the actions of third parties, including the Army Corps of Engineers. Interrogatory No. 5, however, asks the jury to award damages for each category of damages without accounting for these other causes.

Finally, Chevron objects to the verdict form because it fails to include questions regarding important affirmative defenses. The jury should be asked to determine whether defenses such as prescription, failure to mitigate damages, justifiable/detrimental reliance, and the Parish's and State's knowledge, apply as to all Chevron's activities in the Case Area to which SLCRMA might apply.

Dated: April 3, 2025

Respectfully submitted:

*/s/ Claire E. Juneau*

**KEAN MILLER LLP**
Charles S. McCowan, III (#19699)
trey.mccowan@keanmiller.com
L. Victor Gregoire (#22400)
victor.gregoire@keanmiller.com
Pamela R. Mascari (#25162)
pam.mascari@keanmiller.com
John C. Funderburk (#35597)
john.funderburk@keanmiller.com
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

-and-

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

**KEAN MILLER LLP**
Michael R. Phillips (#21020)
mike.phillips@keanmiller.com
Claire E. Juneau (#33209)
claire.juneau@keanmiller.com
Anne C. Lemelin (#38038)
annie.lemelin@keanmiller.com
Kelicia D. Raya (#40018)
kelicia.raya@keanmiller.com
Michael A. Levatino, Jr. (#39961)
michael.levatino@keanmiller.com
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3951

-and-

Eric J. Mayer (#14184)
emayer@susmangodfrey.com
Alexandra White (#29478)
lwhite@susmangodfrey.com
Johnny Carter (#37985)
jcarter@susmangodfrey.com

Megan E. Griffith (*Pro Hac Vice*)
mgriffith@susmangodfrey.com
Brian Melton (*Pro Hac Vice*)
bmelton@susmangodfrey.com
**SUSMAN GODFREY, LLP**
1000 Louisiana St.
Suite 5100
Houston, TX 77002
Telephone: 713-653-7883
Facsimile: 713-654-6666

-and-

Mark A. Pivach (#14327)
mpivach@pivachlaw.com
**PIVACH, PIVACH, HUFFT, THRIFFILEY & DUNBAR**
8311 Highway 23
Suite 104
P.O. Box 7125
Belle Chasse, Louisiana, 70037

***Attorneys for Chevron U.S.A. Inc., Chevron U.S.A. Holdings Inc. and The Texas Company***

ELECTRONICALLY FILED
2025 Apr 03 3:44 PM
00060996
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by electronic mail and/or U.S. Mail, postage prepaid and properly addressed, this 3rd day of April, 2025.

*/s/ Claire E. Juneau*
Claire E. Juneau